IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CEPHALON, INC. and CIMA LABS, INC.,

Plaintiffs,

v.

WATSON PHARMACEUTICALS, INC. and
WATSON LABORATORIES, INC.,

Defendants.

Civil Action No. 08-330-JJF

## AFFIDAVIT OF SERVICE ON
## WATSON PHARMACEUTICALS, INC. AND WATSON LABORATORIES, INC.
## PURSUANT TO D.Del. LR 4.1(b) AND 10 DEL. C. § 3104

Douglas E. McCann, being duly sworn, deposes and says:

1.      I am an employee of the firm of Fish & Richardson P.C. which represents plaintiffs in the above-captioned action, and am duly authorized to make this affidavit regarding service of process on defendants Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc.

2.      Defendants Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. are Nevada corporations. The registered agent for service of process in Nevada for the defendants is the Corporation Trust Company of Nevada, 6100 Neil Road, Suite 500, Reno Nevada, 89511 (the "Registered Agent").

3.      On June 3, 2008, plaintiffs served the Complaint and Summons in this action on both defendants through the Delaware Secretary of State pursuant to 10 Del. C. § 3104.

4.      On June 6, 2008, plaintiffs sent notice letters by registered mail to defendants' Registered Agent. The notice letters advised the defendants that plaintiffs had served process on the Delaware Secretary of State and that, pursuant to 10 Del. C. § 3104, such service was as effectual to all intents and purposes as if it had been made upon the defendants personally within

Delaware. The notice letters enclosed copies of the Summons and Complaint, as served on the Delaware Secretary of State, along with other case documents. Plaintiffs also sent copies of the notice letters (with enclosures) to the general counsel of the defendants at 311 Bonnie Circle Drive, Corona, California 92880. True and correct copies of the notice letters with enclosures are attached hereto as Exhibit A.

5.      The registered letters were delivered to both Defendant Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. at the address of their Registered Agent on June 16, 2008. True and correct copies of the return receipts evidencing delivery are attached hereto as Exhibit B. I received this documentation on June 23, 2008, from the United States Postal Service.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Douglas E. McCann

SWORN TO AND SUBSCRIBED before me this 24th day of June 2008.

Notary Public

My Commission Expires: 11/18/08

Rule 4 Affidavit.doc

2

# Exhibit A

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
302 652-5070

June 6, 2008

Facsimile
302 652-0607

Web Site
www.fr.com

**VIA REGISTERED MAIL –
RETURN RECEIPT REQUESTED (RA 187 584 725 US)**

Douglas E. McCann
302 778-8437

Email
DMcCann@fr.com

Watson Pharmaceuticals, Inc.
c/o Corporation Trust Company of Nevada
6100 Neil Road, Suite 500
Reno, NV 89511

**FR**

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:   *Cephalon, Inc., et al. v. Watson Pharmaceuticals, Inc., et al.*
      USDC-DE – C.A. No. 08-330

Dear Sir or Madam:

Enclosed are copies of the Summons, Complaint, Notice of Availability of
Magistrate Judge, and plaintiffs' Corporate Disclosures, which were filed on June 2,
2008, in the above-captioned matter.  This will serve as notice that service of the
originals of such process has been made upon the Delaware Secretary of State on
June 3, 2008 and that, under 10 <u>Del</u>. <u>C</u>. §3104, such service is as effectual to all
intents and purposes as if it had been made upon Watson Pharmaceuticals, Inc.
personally within this State.

Very truly yours,

Douglas E. McCann

DEM:sb

Enclosures

cc:  General Counsel, Watson Pharmaceuticals, Inc. (w/encl.)

pharm 80061376 (2).doc

AO 440 (Rev. 10/93) Summons in a Civil Action

# In The United States District Court
## For The District Of Delaware

| | |
|---|---|
| CEPHALON, INC. and CIMA LABS, INC., | |
| Plaintiffs, | **SUMMONS IN A CIVIL CASE** |
| v. | C.A. No.    0 8 - 3 3 0 |
| WATSON PHARMACEUTICALS, INC. and WATSON LABORATORIES, INC., | |
| Defendants. | |

TO:   **WATSON PHARMACEUTICALS, INC.**
c/o Corporation Trust Company of Nevada
6100 Neil Road, Suite 500
Reno, NV 89811

c/o Delaware Secretary of State                    Pursuant to 10 Del.C. §3104
401 Federal Street, Suite 3
Dover, DE 19901

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William J. Marsden, Jr.
Fish & Richardson P.C.
919 N. Market Street, 11th floor
P.O. Box 1114
Wilmington, DE 19899-1114

an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**PETER T. DALLEO**

_____                    Date    6/2/08
Clerk

_____
(By) Deputy Clerk

AO 440 (Rev. 10/93) Summons in a Civil Action

<table>
<tr><td colspan="2" align="center">**RETURN OF SERVICE**</td></tr>
<tr><td>Service of the Summons and Complaint was made by me [1]</td><td>DATE: June 3, 2008</td></tr>
<tr><td>NAME OF SERVER *(PRINT)* Bryan Steilkie</td><td>TITLE: Process Server</td></tr>
</table>

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:
☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with who the summons and complaint were left:

☐ Return unexecuted:

☑ Other *(specify):* Served upon Watson Pharmaceuticals Inc by serving the Delaware secretary of State located at 401 Federal Street Dover DE 19901. Service accepted by Karen Charbonneau at 1:45 p.m.

<table>
<tr><td colspan="3" align="center">**STATEMENT OF SERVICE FEES**</td></tr>
<tr><td>TRAVEL:</td><td>SERVICES:</td><td>TOTAL:</td></tr>
</table>

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on: 6/3/08
_____
*Date*

_____
*Signature of Server*

15 East North Street Dover DE 19901
*Address of Server*

_____
[1]    As to who may serve a summons, see Rule 4 of the Federal Rules of Civil Procedures.

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

June 6, 2008

Facsimile
302 652-0607

Web Site
www.fr.com

Douglas E. McCann
302 778-8437

**VIA REGISTERED MAIL**
**RETURN RECEIPT REQUESTED (RA 187 584 711 US)**

Email
DMcCann@fr.com

Watson Laboratories, Inc.
c/o Corporation Trust Company of Nevada
6100 Neil Road, Suite 500
Reno, NV 89511



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    *Cephalon, Inc., et al. v. Watson Pharmaceuticals, Inc., et al.*
       USDC-DE – C.A. No. 08-330

Dear Sir or Madam:

Enclosed are copies of the Summons, Complaint, Notice of Availability of
Magistrate Judge, and plaintiffs' Corporate Disclosures, which were filed on June 2,
2008, in the above-captioned matter. This will serve as notice that service of the
originals of such process has been made upon the Delaware Secretary of State on
June 3, 2008 and that, under 10 <u>Del</u>. <u>C</u>. §3104, such service is as effectual to all
intents and purposes as if it had been made upon Watson Laboratories, Inc. personally
within this State.

Very truly yours,

Douglas E. McCann

DEM:sb

Enclosures

cc      General Counsel, Watson Laboratories, Inc. (w/encl.)

labs 80061377.doc

AO 440 (Rev. 10/93) Summons in a Civil Action

# In The United States District Court
## For The District Of Delaware

CEPHALON, INC. and CIMA LABS, INC.,

         Plaintiffs,

   v.

WATSON PHARMACEUTICALS, INC. and
WATSON LABORATORIES, INC.,

         Defendants.

**SUMMONS IN A CIVIL CASE**

C.A. No.    0 8 - 3 3 0 -

TO:  **WATSON LABORATORIES, INC.**
    c/o Corporation Trust Company of Nevada
    6100 Neil Road, Suite 500
    Reno, NV  89811

    c/o Delaware Secretary of State       Pursuant to 10 Del.C.  §3104
    401 Federal Street, Suite 3
    Dover, DE 19901

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

    William J. Marsden, Jr.
    Fish & Richardson P.C.
    919 N. Market Street, 11th floor
    P.O. Box 1114
    Wilmington, DE 19899-1114

an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

PETER T. DALLEO

_____        _6/2/08_____

Clerk                                           Date

_____
(By) Deputy Clerk

AO 440 (Rev. 10/93) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and Complaint was made by me [1] | DATE: June 3, 2008 | |
| NAME OF SERVER *(PRINT)* Bryan Steilkie | TITLE: Process Server | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:
☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with who the summons and complaint were left:

☐ Return unexecuted:

☑ Other *(specify):* Served upon Watson Laboratories Inc by serving the Delaware Secretary of State located at 401 Federal Street Dover DE 19901. Service accepted by Karen Charbonneau at 1:45 p.m.

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL: | SERVICES: | TOTAL: |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on: 6/3/08
_____
Date

_____
Signature of Server

15 East North Street Dover DE 19901
*Address of Server*

---

[1]    As to who may serve a summons, see Rule 4 of the Federal Rules of Civil Procedures.

JS 44 (Rev 11/04)



# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CEPHALON, INC. and CIMA LABS, INC.

(b) County of Residence of First Listed Plaintiff  Chester County, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
WATSON PHARMACEUTICALS, INC. and
WATSON LABORATORIES, INC.
County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

(c) Attorneys (Firm Name, Address, and Telephone Number)
William J. Marsden, Jr.
Fish & Richardson P.C. (Delaware)
Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware 19899-1114
(302) 652-5070

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1. U.S. Government
  Plaintiff
- ☐ 2. U.S. Government
  Defendant
- ☒ 3. Federal Question
  (U.S. Government Not a Party)
- ☐ 4. Diversity
  (Indicate Citizenship of Parties
  in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br><br>**PERSONAL INJURY**<br>☐ 362 Personal Injury - - - Med. Malpractice<br>☐ 365 Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth In Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS – Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act |  |

## V. ORIGIN (PLACE "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing. (Do not cite jurisdictional statutes unless diversity.)

Brief description of cause: Patent infringement under 35 U.S.C. 271.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

Demand: $

CHECK YES only if demanded in Complaint
JURY DEMAND   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See Instructions)

JUDGE s

DOCKET NUMBER

DATE
6/2/08

SIGNATURE OF ATTORNEY OF RECORD
William J. Marsden Jr. By DSN

TYPE NAME OF ATTORNEY
William J. Marsden, Jr.

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CEPHALON, INC., )
and CIMA LABS, INC., )
)
Plaintiffs, )
)
v. )          Civil Action. No. _____
)
WATSON  PHARMACEUTICALS, INC., )
and WATSON LABORATORIES, INC., )
)
Defendants. )

08 ‑ 330

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Cephalon, Inc. and CIMA Labs, Inc. (collectively, "Plaintiffs") for their complaint against Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. (collectively "Defendants" or "Watson"), to the best of their knowledge, information and belief, hereby allege as follows:

## THE PARTIES

1.      Plaintiff Cephalon, Inc. ("Cephalon") is a Delaware corporation having a principal place of business at 41 Moores Road, Frazer, Pennsylvania 19355.

2.      Plaintiff CIMA Labs, Inc. ("CIMA") is a Delaware corporation having a principal place of business at 10000 Valley View Road, Eden Prairie, Minnesota 55344.

3.      Defendant Watson Pharmaceuticals, Inc. ("Watson Pharmaceuticals") is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 311 Bonnie Circle, Corona, California 92880.

4.      Defendant Watson Laboratories, Inc. ("Watson Laboratories") is a Nevada corporation having a principal place of business at 311 Bonnie Circle, Corona, California 92880-2882.

5.      Defendant Watson Laboratories is a wholly-owned subsidiary of Defendant Watson Pharmaceuticals, and the two have common officers and directors.

6.      Defendant Watson Pharmaceuticals develops, manufactures, and/or markets pharmaceutical products throughout the United States, including in this judicial district, through its own actions and through the actions of its agents and operating subsidiaries, including Watson Laboratories, Inc.

## JURISDICTION AND VENUE

7.      This is an action for infringement of United States Patent Nos. 6,200,604 B1 ("the '604 patent") and 6,974,590 B2 ("the '590 patent") under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*, including §§ 271(e)(2) and 271(b) and for a declaratory judgment of infringement of the '604 and '590 patents under 28 U.S.C. §§ 2201 and 2202.  A copy of the '604 patent is attached as Exhibit A.  A copy of the '590 patent is attached as Exhibit B.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

9.      Plaintiffs allege, in this paragraph and the following paragraphs on information and belief, that this Court has personal jurisdiction over Defendants Watson Pharmaceuticals and Watson Laboratories by virtue of the fact that, *inter alia*, they have committed, or aided, abetted, contributed to and/or participated in the commission of the tortious act of patent infringement that has led to foreseeable harm and injury to Plaintiffs

2

Cephalon and CIMA, both Delaware corporations. This Court has personal jurisdiction over Defendants Watson Pharmaceuticals and Watson Laboratories for the additional reasons set forth below and for other reasons to be determined.

10. In addition, this Court also has personal jurisdiction over Defendant Watson Pharmaceuticals by virtue of, *inter alia*, its systematic and continuous contacts with Delaware; and personal jurisdiction over Watson Laboratories by virtue, *inter alia*, of its presence in Delaware directly and through its parent Watson Pharmaceuticals and sister corporations.

11. Watson Pharmaceuticals and Watson Laboratories are agents of each other, and of other Watson subsidiaries that distribute pharmaceutical products into Delaware with respect to the development, regulatory approval, marketing, sale and distribution of pharmaceutical products, including the fentanyl citrate buccal tablets described in ANDA 79-075 (as defined below).

12. If ANDA 79-075 is approved, the Watson Generic Products (as defined below), which are charged with infringing the patents-in-suit, would, among other things, be marketed and distributed in Delaware, and/or prescribed by physicians practicing and dispensed by pharmacies located within Delaware, all of which would have a substantial effect on Delaware.

13. Watson Pharmaceuticals and Watson Laboratories are alter egos of each other, and of other Watson subsidiaries that distribute pharmaceutical products into Delaware with respect to the development, regulatory approval, marketing, sale and distribution of pharmaceutical products, including the fentanyl citrate buccal tablets described in ANDA 79-075 (as defined below).

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND

15.     As discussed in further detail below, Watson filed ANDA 79-075 seeking to market a generic version of Cephalon's Fentora® brand fentanyl citrate buccal tablets.

16.     Cephalon markets and distributes Fentora® nationwide, including in the District of Delaware.  The filing of ANDA 79-075 evidences an intent by Watson to compete with Cephalon and place its product into every market where Fentora® is currently found, including the District of Delaware.

17.     As discussed above, Watson Pharmaceuticals and Watson Laboratories share common officers and directors and hold themselves out to the public generally, and in the Paragraph IV letter (as defined below) to Cephalon specifically, as a unified operation.

18.     For example, the Paragraph IV letter (as defined below) received by Cephalon in this case was transmitted on Watson Pharmaceuticals stationery and directed Cephalon to send any correspondence or requests for confidential access to any information related to the ANDA to Kenton M. Walker, who was identified as "Counsel-Intellectual Property, Watson Pharmaceuticals, Inc."

19.     Such Paragraph IV letter on the aforementioned Watson Pharmaceuticals letterhead was signed, however, by a person identifying himself as Ernest Lengle, Ph.D., "Executive Director, Regulatory Affairs, Watson Laboratories, Inc."  By such actions, Watson Laboratories held out to the public generally and to Cephalon specifically, that Dr. Engle had actual or at least apparent authority to bind Watson Pharmaceuticals.

4

20.    In an ANDA communication unrelated to this case dated June 19, 2006, from Watson to Warner Chilcott, Inc., Ernest Lengle, Ph.D was identified as "Executive Director, Regulatory Affairs, Watson Pharmaceuticals, Inc."

21.    In response to the Paragraph IV letter to Cephalon, Cephalon wrote, as it had been instructed by Dr. Engle in his capacity as Executive Director, Regulatory Affairs, Watson Laboratories, to "Kenton M. Walker, Counsel-Intellectual Property, Watson Pharmaceuticals, Inc."  In its response, Cephalon asked for further information as to the identity of the Watson entities that participated in the filing of ANDA 79-075 because of the confusing nature of the Paragraph IV letter – specifically, the references to both Watson Pharmaceuticals and Watson Laboratories.

22.    In response, Kenton M. Walker wrote back, declining to provide the various Watson entities' role in the ANDA filing.  In this letter -- now on Watson Laboratories stationery -- Walker described himself for the first time to Cephalon as "Counsel-Intellectual Property, Watson Laboratories, Inc."

23.    In prior dealings with Cephalon, Watson has also acted as a unified entity.

24.    Watson Pharma, Inc. ("Watson Pharma") is a Delaware corporation having a principal place of business at 360 Mount Kemble Avenue, Morristown, New Jersey 07962.

25.    Watson Pharma is a wholly-owned subsidiary of Defendant Watson Pharmaceuticals, and the two share at least certain common officers and directors.

26.    On August 2, 2006, Watson Pharma entered into an agreement with Cephalon captioned "Oral Transmucosal Fentanyl Citrate Sales Agent Agreement" (the "Fentanyl Citrate Agreement").

27.    The Fentanyl Citrate Agreement appoints Watson Pharma as non-exclusive sales agent for another fentanyl-citrate product that contains the same controlled substance for a similar indication as the formulation covered by the patents-in-suit.

28.    In the Fentanyl Citrate Agreement, Watson Pharma agreed that Delaware law governed the Fentanyl Citrate Agreement and its interpretation.

29.    In addition, Watson Pharma agreed to bind not only itself, but other Watson entities, including its parent, defendant Watson Pharmaceuticals, and its sister company, defendant Watson Laboratories, in certain undertakings.  In addition, the Fentanyl Citrate Agreement specified that any notice issued pursuant to the agreement was to be delivered to the general counsel of Watson Pharmaceuticals (and not Watson Pharma), further demonstrating the close relationship among the Watson companies.

30.    The Fentanyl Citrate Agreement also incorporated a Quality Technical Agreement.  The Quality Technical Agreement was signed on September 21, 2006, by a person identified in the Quality Technical Agreement as Senior Vice President Quality Assurance for defendant Watson Pharmaceuticals, notwithstanding the fact that the contracting parties were Cephalon and Watson Pharma.

## THE PATENTS IN SUIT

31.    On March 13, 2001, the '604 patent titled "Sublingual Buccal Effervescent," was duly and legally issued by the United States Patent and Trademark Office ("PTO").  Plaintiff CIMA is the lawful owner by assignment of all right, title and interest in and to the '604 patent, including all right to sue and recover for infringement thereof.

32.     On December 13, 2005, the '590 patent, titled "Sublingual Buccal Effervescent," was duly and legally issued by the PTO.  Plaintiff CIMA is the lawful owner by assignment of all right, title and interest in and to the '590 patent, including all right to sue and recover for infringement thereof.

33.     Cephalon is the holder of an approved New Drug Application ("NDA") No. 21-947 for Fentora® brand fentanyl citrate buccal tablets.  In conjunction with NDA No. 21-947, Cephalon listed with the U.S. Food and Drug Administration ("FDA") the '604 and '590 patents ("the Listed Patents") which cover methods of using the approved Fentora® brand fentanyl citrate buccal tablets.  The '604 and '590 patents appear in the Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") for Fentora®.  Cephalon is also the sole licensee of the patents-in-suit in the United States with the authority to sell fentanyl citrate buccal tablets.

## ACTS GIVING RISE TO THIS ACTION FOR
## INFRINGEMENT OF THE '604 AND '590 PATENTS

34.     Upon information and belief, Defendant Watson Laboratories, jointly with, and/or as the agent or alter ego of its parent Watson Pharmaceuticals, submitted Abbreviated New Drug Application ("ANDA") No. 79-075 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).  That ANDA seeks FDA approval for the commercial manufacture, use and sale throughout the United States including Delaware of generic fentanyl citrate buccal tablets containing 0.1 mg, 0.2 mg, 0.3 mg, 0.4 mg, 0.6 mg and 0.8 mg of fentanyl citrate ("the Watson Generic Products"). ANDA No. 79-075 specifically seeks FDA approval to market the Watson Generic Products prior to the expiration of the '604 patent and prior to expiration of the '590 patent.

35.     Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Watson alleged in ANDA No. 79-075 that the claims of the '604 patent and the claims of the '590 patent are not infringed by the commercial manufacture, use or sale throughout the United States including Delaware of the Watson Generic Products, and that the claims of the '604 patent are invalid and unenforceable.  CIMA Labs received written notification of ANDA No. 79-075 and Watson's §505(j)(2)(A)(vii)(IV) allegations from Watson on or about April 21, 2008 ("Paragraph IV letter").  Such Paragraph IV letter was sent on the letterhead of Watson Pharmaceuticals with instructions to send any request for confidential access to Kenton M. Walker, Counsel – Intellectual Property, Watson Pharmaceuticals.  Cephalon received a similar Paragraph IV letter on or about April 22, 2008.

36.     The stated purpose of the Paragraph IV letters was to notify Plaintiffs that Defendants had filed a certification with the FDA under 21 C.F.R. § 314.50(i)(1)(i)(A)(4) in conjunction with ANDA 79-075 for approval, *inter alia*,  to commercially manufacture and sell generic versions of Cephalon's Fentora® brand fentanyl citrate buccal tablets. The Paragraph IV letter stated that the Watson Generic Products would not infringe the Listed Patents and that the claims of the '604 patent are invalid.

37.     The Paragraph IV letters failed to comply with the requirements of  21 U.S.C. § 355 (j)(2)(B)(iv)(II), *inter alia*, because they contain very limited information about the generic formulation for which Defendants filed ANDA No. 79-075.

38.     Since receiving the Paragraph IV letters, Plaintiffs have attempted several times to obtain information on the Watson Generic Products and to procure a copy of ANDA No. 79-075 from Watson.  Initially, Watson was unwilling to provide ANDA No.

8

79-075 to Plaintiffs except under conditions that would not allow Plaintiffs to
meaningfully process the information contained in the ANDA. Through an extended
negotiation process Watson has withdrawn some of its objections to disclosure of its
ANDA to Plaintiffs but has not yet provided the ANDA for Plaintiffs' review.

39.    Plaintiffs have also repeatedly requested that Watson disclose any role that
Watson Pharmaceuticals, Watson Laboratories or any other Watson entity had in the
preparation of the data contained in the ANDA, the preparation of the ANDA and the
anticipated manufacture, use, distribution, importation, and sale throughout the United
States including Delaware of the Watson Generic Products. However, Watson was
unwilling to disclose this information to Plaintiffs.

40.    Plaintiffs sought from Defendants detailed information on the formulation
of the Watson Generic Products and a copy of ANDA No. 79-075 for the purpose of
evaluating Defendants' claim that they do not infringe the patents-in-suit but were unable
to obtain such information before filing suit. Accordingly, Plaintiffs make the following
allegations on information and belief and subject to Fed. R. Civ. P. 11(b)(3):

## COUNT I
### (Infringement of the '604 Patent Under 35 U.S.C. § 271(e)(2))

41.    Paragraphs 1 to 40 are incorporated herein as set forth above.

42.    Defendants, acting jointly, submitted ANDA No. 79-075 to the FDA to
obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial
manufacture, use, or sale throughout the United States including Delaware of the Watson
Generic Products. By submitting the application, Defendants, individually and
collectively, committed an act of infringement with respect to the '604 patent under 35
U.S.C. § 271(e)(2)(A).

9

43.    Watson Laboratories, acting jointly with Watson Pharmaceuticals, and/or as its agent or alter ego, submitted ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products. By submitting the application, Watson Laboratories has committed an act of infringement with respect to the '604 patent under 35 U.S.C. § 271(e)(2)(A).

44.    When Watson Laboratories submitted ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products, it was acting jointly with Watson Pharmaceuticals and/or acting as Watson Pharmaceutical's agent or alter ego. By acting jointly with Watson Laboratories to submit the application and/or causing its agent or alter ego to submit the application, Watson Pharmaceuticals committed an act of infringement with respect to the '604 patent under 35 U.S.C. § 271(e)(2)(A).

45.    Any commercial manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products prior to patent expiry will infringe the '604 patent.

## COUNT II
### (Infringement of the '604 Patent Under 35 U.S.C. § 271(b)

46.    Paragraphs 1 to 45 are incorporated herein as set forth above.

47.    Watson Pharmaceuticals actively induced Watson Laboratories to submit ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products throughout the United States. By

actively inducing submission of the ANDA, Watson Pharmaceuticals has committed an act of indirect infringement with respect to the '604 patent under 35 U.S.C. § 271(b).

48.    Any commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will infringe the '604 patent.

## COUNT III
### (Declaratory Judgment of Infringement of the '604 Patent Under 35 U.S.C. § 271(a))

49.    Paragraphs 1 to 48 are incorporated herein as set forth above.

50.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

51.    There is an actual case or controversy such that the Court may entertain Plaintiffs' request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

52.    Defendants have made, and will continue to make, substantial preparation in the United States to manufacture, sell, offer to sell, and/or import the Watson Generic Products.

53.    Defendants' actions indicate a refusal to change the course of their action in the face of acts by Plaintiffs.

54.    Any commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will infringe the '604 patent.

55.    Plaintiffs are entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products by either or both of Defendants prior to patent expiry will infringe the '604 patent.

## COUNT IV
### (Infringement of the '590 Patent Under 35 U.S.C. § 271(e)(2)

56.     Paragraphs 1 to 55 are incorporated herein as set forth above.

57.     Defendants, acting jointly, submitted ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products prior to patent expiry.  By submitting the application, Defendants, individually and collectively, committed an act of infringement with respect to the '590 patent under 35 U.S.C. § 271(e)(2)(A).

58.     Watson Laboratories, acting jointly with Watson Pharmaceuticals, and/or as its agent or alter ego, submitted ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products prior to patent expiry.  By submitting the application, Watson Laboratories has committed an act of infringement with respect to the '590 patent under 35 U.S.C. § 271(e)(2)(A).

59.     When Watson Laboratories submitted ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products prior to patent expiry, it was acting jointly with Watson Pharmaceuticals and/or acting as Watson Pharmaceutical's agent or alter ego.  By acting jointly with Watson Laboratories to submit the application and/or causing its agent or alter ego to submit the application, Watson Pharmaceuticals committed an act of infringement with respect to the '590 patent under 35 U.S.C. § 271(e)(2)(A).

60.     Any commercial manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products prior to patent expiry will infringe the '590 patent.

## COUNT V
### (Infringement of the '590 Patent Under 35 U.S.C. § 271(b))

61.     Paragraphs 1 to 60 are incorporated herein as set forth above.

62.     Watson Pharmaceuticals actively induced Watson Laboratories to submit ANDA No. 79-075 to the FDA to obtain approval under the Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale throughout the United States including Delaware of the Watson Generic Products prior to patent expiry throughout the United States including Delaware.  By actively inducing submission of the ANDA, Watson Pharmaceuticals has committed an act of indirect infringement with respect to the '590 patent under 35 U.S.C. § 271(b).

63.     The commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will infringe the '604 patent.

## COUNT VI
### (Declaratory Judgment of Infringement of the '590 Patent Under 35 U.S.C. § 271(a))

64.     Paragraphs 1 to 63 are incorporated herein as set forth above.

65.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

66.     There is an actual case or controversy such that the Court may entertain Plaintiffs' request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

13

67.    Defendants have made, and will continue to make, substantial preparation in the United States to manufacture, sell, offer to sell, and/or import the Watson Generic Products prior to patent expiry.

68.    Defendants' actions indicate a refusal to change the course of their action in the face of acts by Plaintiffs.

69.    The commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will infringe the '590 patent.

70.    Plaintiffs are entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products prior to patent expiry by either or both of Defendants will infringe the '590 patent.

## EXCEPTIONAL CASE

71.    Watson Laboratories was aware of the '604 patent and '590 patent prior to filing ANDA No. 79-075.

72.    Watson Pharmaceuticals was aware of the '604 patent and '590 patent prior to filing ANDA No. 79-075.

73.    The actions of Watson Pharmaceuticals and Watson Laboratories, individually and collectively, render this an exceptional case under 35 U.S.C. § 285.

## INJUNCTIVE RELIEF

74.    Plaintiffs will be irreparably harmed by Watson Laboratories' infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

14

75.    Plaintiffs will be irreparably harmed by Watson Pharmaceuticals' infringing activities unless those activities are enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for the following relief:

a.    That judgment be entered that Defendants, individually and/or collectively, have infringed the '604 patent under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 79-075 under the Federal Food, Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '604 patent;

b.    That judgment be entered that Watson Laboratories has infringed the '604 patent under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 79-075 under the Federal Food, Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, sale and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '604 patent;

c.    That judgment be entered that Watson Pharmaceuticals has infringed the '604 patent under 35 U.S.C. § 271(e)(2)(A) by acting jointly with Watson Laboratories or allowing Watson Laboratories to act as its agent or alter ego in submitting ANDA No. 79-075 under the Federal Food Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '604 patent;

d.    That judgment be entered that Watson Pharmaceuticals has infringed the '604 patent under 35 U.S.C. § 271(b) by inducing Watson Laboratories to submit ANDA

No. 79-075 under the Federal Food Drug, and Cosmetic Act, and that the commercial

manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products

prior to patent expiry will constitute an act of infringement of the '604 patent;

      e.     That an order be issued under 35 U.S.C. § 271(e)(4)(A) that the effective

date of any FDA approval of ANDA No. 79-075 shall be a date which is not earlier than

the expiration date of the '604 patent including any extensions;

      f.     That an injunction be issued under 35 U.S.C. § 271(e)(4)(B) permanently

enjoining Watson Pharmaceuticals, Watson Laboratories, their officers, agents, servants,

employees, licensees, representatives, and attorneys, and all other persons acting or

attempting to act in active concert or participation with them or acting on their behalf,

from engaging in the commercial manufacture, use, offer to sell, or sale within the United

States, or importation into the United States, of any drug product covered by the '604

patent;

      g.     That damages or other monetary relief be awarded to Plaintiffs under 35

U.S.C. § 271(e)(4)(C) as appropriate;

      h.     That a declaration be issued under 28 U.S.C. § 2201 that if Watson

Pharmaceuticals, Watson Laboratories, their officers, agents, servants, employees,

licensees, representatives, and attorneys, and all other persons acting or attempting to act

in active concert or participation with them or acting on their behalf, engage in the

commercial manufacture, use, offer for sale, sale, and/or importation of the Watson

Generic Products prior to patent expiry, it will constitute an act of infringement of the

'604 patent;

i.    That judgment be entered that Defendants, individually and/or collectively, have infringed the '590 patent under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 79-075 under the Federal Food, Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '590 patent;

j.    That judgment be entered that Watson Laboratories has infringed the '590 patent under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 79-075 under the Federal Food, Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, sale and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '590 patent;

k.    That judgment be entered that Watson Pharmaceuticals has infringed the '590 patent under 35 U.S.C. § 271(e)(2)(A) by acting jointly with Watson Laboratories or allowing Watson Laboratories to act as its agent or alter ego in submitting ANDA No. 79-075 under the Federal Food Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '590 patent;

l.    That judgment be entered that Watson Pharmaceuticals has infringed the '590 patent under 35 U.S.C. § 271(b) by inducing Watson Laboratories to submit ANDA No. 79-075 under the Federal Food Drug, and Cosmetic Act, and that the commercial manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products prior to patent expiry will constitute an act of infringement of the '590 patent;

m.     That an order be issued under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 79-075 shall be a date which is not earlier than the expiration date of the '590 patent including extensions;

n.     That an injunction be issued under 35 U.S.C. § 271(e)(4)(B) permanently enjoining Watson Pharmaceuticals, Watson Laboratories, their officers, agents, servants, employees, licensees, representatives, and attorneys, and all other persons acting or attempting to act in active concert or participation with them or acting on their behalf, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any drug product covered by the '590 patent;

o.     That damages or other monetary relief be awarded to Plaintiffs under 35 U.S.C. § 271(e)(4)(C) as appropriate;

p.     That a declaration be issued under 28 U.S.C. § 2201 that if Watson Pharmaceuticals, Watson Laboratories, their officers, agents, servants, employees, licensees, representatives, and attorneys, and all other persons acting or attempting to act in active concert or participation with them or acting on their behalf, engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Watson Generic Products prior to patent expiry, it will constitute an act of infringement of the '590 patent;

q.     That this is an exceptional case under 35 U.S.C. § 285, and that Plaintiffs be awarded reasonable attorneys' fees and costs; and

r.    That this Court award such other and further relief as it may deem just and

proper.

Dated: June 2, 2008                                    FISH & RICHARDSON, P.C.

William J. Marsden, Jr. (#2247)
Douglas E. McCann (#3852)
919 N. Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070
marsden@fr.com
dmccann@fr.com

*Attorneys for Plaintiffs*

Of Counsel:

Duane-David Hough
FISH & RICHARDSON, P.C.
Citigroup Center
52nd Floor
153 East 53rd Street
New York, NY  10022-4611
(212) 765-5070

Jonathan E. Singer
FISH & RICHARDSON, P.C.
60 South Sixth Street
3300 RBC Plaza
Minneapolis, MN  55402
(612) 335-5070

80061381.doc

# COMPLAINT
# EXHIBIT A



US006200604B1

(12) **United States Patent**　　　　　(10) Patent No.: **US 6,200,604 B1**
Pather et al.　　　　　　　　　　　　(45) Date of Patent: **Mar. 13, 2001**

(54) **SUBLINGUAL BUCCAL EFFERVESCENT**

(75) Inventors: **Sathasivan Indiran Pather**, Plymouth; **Rajendra K. Khankari**, Maple Grove, both of MN (US); **Jonathan D. Eichman**, Ann Arbor, MI (US); **Joseph R. Robinson**, Madison, WI (US); **John Hontz**, Plymouth, MN (US)

(73) Assignee: **Cima Labs Inc.**, Minneapolis, MN (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/327,814**

(22) Filed: **Jun. 8, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 09/277,424, filed on Mar. 26, 1999.
(60) Provisional application No. 60/079,652, filed on Mar. 27, 1998.

(51) Int. Cl.[7] ............................... A61K 9/46; A61K 9/20
(52) U.S. Cl. ........................ 424/466; 424/465; 424/434
(58) Field of Search ...................... 424/466, 465, 424/464, 435

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,972,995 | * | 8/1976 | Tsuk et al. ............................. 424/28 |
| 4,493,848 | | 1/1985 | LaHann et al. ....................... 424/324 |
| 4,639,368 | | 1/1987 | Niazi et al. ........................... 424/48 |
| 5,135,752 | * | 8/1992 | Snipes ................................. 424/486 |
| 5,178,878 | * | 1/1993 | Wehling et al. ...................... 424/466 |
| 5,223,264 | * | 6/1993 | Wehling et al. ...................... 424/466 |
| 5,458,879 | | 10/1995 | Singh et al. .......................... 424/400 |
| 5,607,697 | | 3/1997 | Alkire et al. ......................... 424/495 |
| 5,656,284 | * | 8/1997 | Balkin ................................. 424/435 |
| 5,958,455 | * | 9/1999 | Roser et al. .......................... 424/489 |
| 5,958,468 | | 9/1999 | Norling et al. ....................... 424/490 |

FOREIGN PATENT DOCUMENTS

WO 91/04757    4/1991   (WO) .

OTHER PUBLICATIONS

Eichman, J.D., and Robinson, J.R., "Mechanistic Studies on Effervescent–Induced Permeability Enhancement," Pharm. Res. 15(6):925–30 (1998).
Squier, C.A., and Wertz, P.W., "Structure and Function of the Oral Mucosa and Implications for Drug Delivery", *Oral Mucosal Drug Delivery,* Ch. 1, pp. 1–19 (1996).
Wertz et al., "Biochemical Basis of the Permeability Barrier in Skin and Oral Mucosa", *Oral Mucosal Drug Delivery,* Ch. 2, pp. 27–41 (1996).

Zhang, H., and Robinson, J.R., "Routes of Drug Transport Across Oral Musoca", *Oral Mucosal Drug Delivery,* Ch. 3, pp. 51–61 (1996).
Aungst, B.J., "Oral Mucosal Permeation Enhancement: Possibilities and Limitations", *Oral Mucosal Drug Delivery,* Ch. 4, pp. 65–81 (1996).
Zhang, H., and Robinson, J.R., "In Vitro Methods for Measuring Permeability of the Oral Mucosa", *Oral Mucosal Drug Delivery,* Ch. 5, pp. 85–97 (1996).
Audus, K.L., "Buccal Epithelial Cell Cultures as a Model to Study Oral Mucosal Drug Transport and Metabolism", *Oral Mucosal Drug Delivery,* Ch. 6, pp. 101–115 (1996).
Rathbone et al., "In Vivo Techniques for Studying the Oral Mucosal Absorption Characteristics of Drugs in Animals and Humans", *Oral Mucosal Drug Delivery,* Ch. 7, pp. 121–151 (1996).
Weatherell et al., "The Flow of Saliva and Its Influence on the Movement, Deposition and Removal of Drugs Administered to the Oral Cavity", *Oral Mucosal Drug Delivery,* Ch. 8, pp. 157–187 (1996).
Schenkels et al., "Salivary Mucins: Their Role in Oral Mucosal Barrier Function and Drug Delivery", *Oral Mucosal Drug Delivery,* Ch. 9, pp. 191–211 (1996).
Kellaway, I.W., and Warren, S.J., "Mucoadhesive Hydrogels for Buccal Delivery", *Oral Mucosal Drug Delivery,* Ch. 10, pp. 221–237 (1996).
Rathbone et al., "Systemic Oral Mucosal Drug Delivery and Delivery Systems", *Oral Mucosal Drug Delivery,* Ch. 11, pp. 241–275 (1996).
DeGrande et al., "Specialized Oral Mucosal Durg Delivery Systems: Patches", *Oral Mucosal Drug Delivery,* Ch. 12, pp. 285–313 (1996).
Rassing, .R., "Specialized Oral Mucosal Drug Delivery Systems: Chewing Gum", *Oral Mucosal Drug Delivery,* Ch. 13, pp. 319–353 (1996).
Soskolone, W.A., and Freidman, M., "Intra–periodontal Pocket Drug Delivery Systems", *Oral Mucosal Drug Delivery,* Ch. 14, pp. 359–373 (1996).

* cited by examiner

Primary Examiner—Thurman K. Page
Assistant Examiner—Isis Ghali
(74) Attorney, Agent, or Firm—Lerner, David, Littenberg, Krumholz & Mentlik, LLP

(57) **ABSTRACT**

A pharmaceutical dosage form adapted to supply a medicament to the oral cavity for buccal, sublingual or gingival absorption of the medicament which contains an orally administerable medicament in combination with an effervescent for use in promoting absorption of the medicament in the oral cavity. The use of an additional pH adjusting substance in combination with the effervescent for promoting the absorption drugs is also disclosed.

**12 Claims, No Drawings**

US 6,200,604 B1

1

# SUBLINGUAL BUCCAL EFFERVESCENT

## CROSS-REFERENCE TO RELATED APPLICATIONS

The present application is a continuation application of U.S. patent application Ser. No. 09/277,424, filed Mar. 26, 1999.

The present invention claims the benefit of the U.S. Provisional Application Ser. No. 60/079,652 filed on Mar. 27, 1998, the disclosure of which is incorporated by reference herein.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to pharmaceutical compositions, and more particularly to pharmaceutical compositions for oral administration of a medicament, which contain an effervescent agent for enhancing oral drug absorption across the buccal, sublingual, and gingival mucosa.

### 2. Description of Prior Art

Effervescents have been shown to be useful and advantageous for oral administration. See Pharmaceutical Dosage Forms: Tablets Volume I, Second Edition. A. Lieberman. ed. 1989, Marcel Dekker, Inc. As discussed in this text, and as commonly employed, an effervescent tablet is dissolved in water to provide a carbonated or sparkling liquid drink. See also U.S. Pat. Nos. 5,102,665 and 5,468,504 to Schaeffer, herein incorporated by reference. In such a drink, the effervescent helps to mask the taste of medicaments.

Effervescent compositions have also been employed for use as taste masking agents in dosage forms which are not dissolved in water prior to administration. For example, U.S. Pat. No. 4,639,368 describes a chewing gum containing a medicament capable of absorption through the buccal cavity and containing a taste masking amount of an effervescent.

More recently effervescents have been employed to obtain rapid dissolution and/or dispersion of the medicament in the oral cavity. See U.S. Pat. Nos. 5,178,878 and 5,223,264. The effervescent tends to stimulate saliva production thereby providing additional water to aid in further effervescent action. These dosage forms give an agreeable presentation of the drug, particularly for patients who have difficulty in swallowing tablets or capsules. PCT application WO 97/06786 describes pre-gastric absorption of certain drugs using rapidly-disbursing dosage forms.

Various proposals have been advanced for oral mucosal administration of various drugs. When drugs are absorbed from the oral mucosa, they bypass the gastrointestinal and hepatic metabolism process. This can lead to a faster onset of action and/or improved bioavailability of a drug. However, many compounds do not rapidly penetrate the oral mucosa. See, e.g., Christina Graffner, *Clinical Experience with Novel Buccal and Sublingual Administration*; NOVEL DRUG DELIVERY AND ITS THERAPEUTIC APPLICATION, edited by L. F. Prescott and W. S. Nimmo (1989); David Harris & Joseph R. Robinson, *Drug Delivery via the Mucous Membranes of the Oral Cavity*; JOURNAL OF PHARMACEUTICAL SCIENCES, Vol. 81 (January 1992); *Oral Mucosal Delivery*, edited by M. J. Rathbone, which are herein incorporated by reference. The compounds which may be well absorbed per-orally (through the gastrointestinal tract) may not be well absorbed through the mucosa of the mouth because the oral mucosa is less permeable than the intestinal mucosa and it does not offer as big a surface area as the small intestine.

2

Despite these and other efforts toward increasing the permeation of medicaments across the oral mucosa, there have been unmet needs for improved methods of administrating medicaments across the oral mucosa.

## SUMMARY OF THE INVENTION

The pharmaceutical compositions of the present invention comprise an orally administerable medicament in combination with an effervescent agent used as penetration enhancer to influence the permeability of the medicament across the buccal, sublingual, and gingival mucosa.

## DETAILED DESCRIPTION OF THE INVENTION

One aspect of this invention is to use effervescent as penetration enhancers for influencing oral drug absorption. Effervescent agents can be used alone or in combination with other penetration enhancers, which leads to an increase in the rate and extent of absorption of an active drug. It is believed that such increase can rise from one or all of the following mechanisms:

1. reducing the mucosal layer thickness and/or viscosity;

2. tight junction alteration;

3. inducing a change in the cell membrane structure; and

4. increasing the hydrophobic environment within the cellular membrane.

The present dosage forms should include an amount of an effervescent agent effective to aid in penetration of the drug across the oral mucosa. Preferably, the effervescent is provided in an amount of between about 5% and about 95% by weight, based on the weight of the finished tablet, and more preferably in an amount of between about 30% and about 80% by weight. It is particularly preferred that sufficient effervescent material be provided such that the evolved gas is more than about 5 $cm^3$ but less than about 30 $cm^3$, upon exposure of the tablet to an aqueous environment. However, the amount of effervescent agent must be optimized for each specific drug.

The term "effervescent agent" includes compounds which evolve gas. The preferred effervescent agents evolve gas by means of a chemical reaction which takes place upon exposure of the effervescent agent (an effervescent couple) to water and/or to saliva in the mouth. This reaction is most often the result of the reaction of a soluble acid source and a source of carbon dioxide such as an alkaline carbonate or bicarbonate. The reaction of these two general compounds produces carbon dioxide gas upon contact with water or saliva. Such water-activated materials must be kept in a generally anhydrous state and with little or no absorbed moisture or in a stable hydrated form, since exposure to water will prematurely disintegrate the tablet. The acid sources may be any which are safe for human consumption and may generally include food acids, acid and hydrite antacids such as, for example: citric, tartaric, amalic, fumeric, adipic, and succinics. Carbonate sources include dry solid carbonate and bicarbonate salt such as, preferably, sodium bicarbonate, sodium carbonate, potassium bicarbonate and potassium carbonate, magnesium carbonate and the like. Reactants which evolve oxygen or other gasses and which are safe for human consumption are also included.

The effervescent agent(s) of the present invention is not always based upon a reaction which forms carbon dioxide. Reactants which evolve oxygen or other gasses which are safe for human consumption are also considered within the scope. Where the effervescent agent includes two mutually

US 6,200,604 B1

3

reactive components, such as an acid source and a carbonate source, it is preferred that both components react completely. Therefore, an equivalent ratio of components which provides for equal equivalents is preferred. For example, if the acid used is diprotic, then either twice the amount of a mono-reactive carbonate base, or an equal amount of a di-reactive base should be used for complete neutralization to be realized. However, in other embodiments of the present invention, the amount of either acid or carbonate source may exceed the amount of the other component. This may be useful to enhance taste and/or performance of a tablet containing an overage of either component. In this case, it is acceptable that the additional amount of either component may remain unreacted.

The present dosage forms may also include in amounts additional to that required for effervescence a pH adjusting substance. For drugs that are weakly acidic or weakly basic, the pH of the aqueous environment can influence the relative concentrations of the ionized and unionized forms of the drug present in solution according to the Henderson-Hasselbach equation. The pH solutions in which an effervescent couple has dissolved is slightly acidic due to the evolution of carbon dioxide. The pH of the local environment, e.g., saliva in immediate contact with the tablet and any drug that may have dissolved from it, may be adjusted by incorporating in the tablet a pH adjusting substances which permit the relative portions of the ionized and unionized forms of the drug to be controlled. In this way, the present dosage forms can be optimized for each specific drug. If the unionized drug is known or suspected to be absorbed through the cell membrane (transcellular absorption) it would be preferable to alter the pH of the local environment (within the limits tolerable to the subject) to a level that favors the unionized form of the drug. Conversely, if the ionized form is more readily dissolved the local environment should favor ionization.

The aqueous solubility of the drug should preferably not be compromised by the effervescent and pH adjusting substance, such that the dosage forms permit a sufficient concentration of the drug to be present in the unionized form. The percentage of the pH adjusting substance and/or effervescent should therefore be adjusted depending on the drug.

Suitable pH adjusting substance for use in the present invention include any weak acid or weak base in amounts additional to that required for the effervescence or, preferably, any buffer system that is not harmful to the oral mucosa. Suitable pH adjusting substance for use in the present invention include, but are not limited to, any of the acids or bases previously mentioned as effervescent compounds, disodium hydrogen phosphate, sodium dihydrogen phosphate and the equivalent potassium salt.

The active ingredient suitable for use in the present dosage forms can include systematically distributable pharmaceutical ingredients, vitamins, minerals, dietary supplements, as well as non-systematically distributable drugs. Preferably, the active ingredient is a systemically active pharmaceutical ingredient which is absorbable by the body through the oral mucosa. Although the dosage forms can be employed with a wide range of drugs, as discussed below, it is especially suitable for drugs and other pharmaceutical ingredients which suffer significant loss of activity in the lumen of the gastrointestinal tract or in the tissues of the gastrointestinal tract during absorption process or upon passage through the liver after absorption in the intestinal tract. Absorption through the oral mucosa allows the drug to enter the systemic circulation without first passing through

4

the liver, and thus alleviates the loss of activity upon passage through the liver.

Pharmaceutical ingredients may include, without limitation, analgesics, anti-inflammatories, antipyretics, antibiotics, antimicrobials, laxatives, anorexics, antihistamines, antiasthmatics, antidiuretics, antiflatuents, antimigraine agents, antispasmodics, sedatives, antihyperactives, antihypertensives, tranquilizers, decongestants, beta blockers; peptides, proteins, oligonucleotides and other substances of biological origin, and combinations thereof. Also encompassed by the terms "active ingredient(s)", "pharmaceutical ingredient(s)" and "active agents" are the drugs and pharmaceutically active ingredients described in Mantelle, U.S. Pat. No. 5,234,957, in columns 18 through 21. That text of Mantelle is hereby incorporated by reference. Alternatively or additionally, the active ingredient can include drugs and other pharmaceutical ingredients, vitamins, minerals and dietary supplements as the same are defined in U.S. Pat. No. 5,178,878, the disclosure of which is also incorporated by reference herein.

The dosage form preferably includes an effervescent couple, in combination with the other ingredients to enhance the absorption of the pharmaceutical ingredient across the oral mucosa and to improve the disintegration profile and the organoleptic properties of the dosage form. For example, the area of contact between the dosage form and the oral mucosa, and the residence time of the dosage form in the oral cavity can be improved by including a bioadhesive polymer in this drug delivery system. See, e.g., *Mechanistic Studies on Effervescent-Induced Permeability Enhancement* by Jonathan Eichman (1997), which is incorporated by reference herein. Effervescence, due to its mucus stripping properties, would also enhance the residence time of the bioadhesive, thereby increasing the residence time for the drug absorption. Non-limiting examples of bioadhesives used in the present invention include, for example, Carbopol 934 P, Na CMC, Methocel, Polycarbophil (Noveon AA-1), HPMC, Na alginate, Na Hyaluronate and other natural or synthetic bioadhesives.

In addition to the effervescence-producing agents, a dosage form according to the present invention may also include suitable non-effervescent disintegration agents. Non-limiting examples of non-effervescent disintegration agents include: microcrystalline, cellulose, croscarmellose sodium, crospovidone, starches, corn starch, potato starch and modified starches thereof, sweeteners, clays, such as bentonite, alginates, gums such as agar, guar, locust bean, karaya, pecitin and tragacanth. Disintegrants may comprise up to about 20 weight percent and preferably between about 2 and about 10% of the total weight of the composition.

In addition to the particles in accordance with the present invention, the dosage forms may also include glidants, lubricants, binders, sweeteners, flavoring and coloring components. Any conventional sweetener or flavoring component may be used. Combinations of sweeteners, flavoring components, or sweeteners and flavoring components may likewise be used.

Examples of binders which can be used include acacia, tragacanth, gelatin, starch, cellulose materials such as methyl cellulose and sodium carboxy methyl cellulose, alginic acids and salts thereof, magnesium aluminum silicate, polyethylene glycol, guar gum, polysaccharide acids, bentonites, sugars, invert sugars and the like. Binders may be used in an amount of up to 60 weight percent and preferably about 10 to about 40 weight percent of the total composition.

US 6,200,604 B1

| 5 | 6 |

Coloring agents may include titanium dioxide, and dyes suitable for food such as those known as F.D.& C. dyes and natural coloring agents such as grape skin extract, beet red powder, beta-carotene, annato, carmine, turmeric, paprika, etc. The amount of coloring used may range from about 0.1 to about 3.5 weight percent of the total composition.

Flavors incorporated in the composition may be chosen from synthetic flavor oils and flavoring aromatics and/or natural oils, extracts from plants, leaves, flowers, fruits and so forth and combinations thereof. These may include cinnamon oil, oil of wintergreen, peppermint oils, clove oil, bay oil, anise oil, eucalyptus, thyme oil, cedar leave oil, oil of nutmeg, oil of sage, oil of bitter almonds and cassia oil. Also useful as flavors are vanilla, citrus oil, including lemon, orange, grape, lime and grapefruit, and fruit essences, including apple, pear, peach, strawberry, raspberry, cherry, plum, pineapple, apricot and so forth. Flavors which have been found to be particularly useful include commercially available orange, grape, cherry and bubble gum flavors and mixtures thereof. The amount of flavoring may depend on a number of factors, including the organoleptic effect desired. Flavors may be present in an amount ranging from about 0.05 to about 3 percent by weight based upon the weight of the composition. Particularly preferred flavors are the grape and cherry flavors and citrus flavors such as orange.

One aspect of the invention provides a solid, oral tablet dosage form suitable for sublingual, buccal, and gingival administration. Excipient fillers can be used to facilitate tableting. The filler desirably will also assist in the rapid dissolution of the dosage form in the mouth. Non-limiting examples of suitable fillers include: mannitol, dextrose, lactose, sucrose, and calcium carbonate.

METHOD OF MANUFACTURE

Tablets can either be manufactured by direct compression, wet granulation or any other tablet manufacturing technique. See, e.g., U.S. Pat. Nos. 5,178,878 and 5,223,264, which are incorporated by reference herein. The tablet may be a layered tablet consisting of a layer of the active ingredient sandwiched between a bioadhesive layer and an effervescence layer. Other layered forms which include the ingredients set forth above in layers of diverse compositions.

| | |
|---|---|
| Effervescence Level | Between 5%–95% |
| Tablet size | Between ¾"–⅝" |
| Tablet hardness | Between 5N and 80N |
| Route of administration | Sublingual, Buccal, Gingival |

The dosage form may be administered to a human or other mammalian subject by placing the dosage form in the subject's mouth and holding it in the mouth, either adjacent a cheek (for buccal administration), beneath the tongue (for sublingual administration) and between the upper lip and gum (for gingival administration). The dosage form spontaneously begins to disintegrate due to the moisture in the mouth. The disintegration, and particularly the effervescence, stimulates additional salivation which further enhances disintegration.

EXAMPLE 1

The dosage form should include Fentanyl, an effervescent and pH adjusting substance so that the pH is adjusted to neutral (or slightly higher) since the pKa of fentanyl is 7.3. At this pH, the aqueous solubility of this poorly water-soluble drug would not be compromised unduly, and would permit a sufficient concentration of the drug to be present in the unionized form.

Two fentanyl formulations, each containing 36% effervescence were produced. These tablets were compressed using half-inch shallow concave punches.

| FORMULATION | COMPONENT | QUANTITY (MG) |
|---|---|---|
| SHORT DISINTEGRATION TIME | Fentanyl, citrate, USP | 1.57 |
| | Lactose monohydrate | 119.47 |
| | Microcrystalline Cellulose, Silicified | 119.47 |
| | Sodium carbonate, anhydrous | 46.99 |
| | Sodium bicarbonate | 105 |
| | Citric acid, anhydrous | 75 |
| | Polyvinylphrrolidone, cross-linked | 25 |
| | Magnesium stearate | 5 |
| | Colloidal silicon dioxide | 2.5 |
| | Total tablet mass | 500 |
| LONG DISINTEGRATION TIME | Fentanyl citrate, USP | 1.57 |
| | Lactose monohydrate | 270.93 |
| | Sodium carbonate, anhydrous | 40.00 |
| | Sodium bicarbonate | 105 |
| | Citric acid, anhydrous | 75 |
| | Magnesium stearate | 5 |
| | Colloidal silicon dioxide | 2.5 |
| | Total tablet mass | 500 |

EXAMPLE 2

The dosage form included prochlorperazine (pKa=8.1), an effervescent and pH adjusting substance so that a slightly higher pH is produced to facilitate the permeation enhancement.

With respect to prochlorperazine, an anti-emetic drug, two formulations, buccal and sublingual, were developed. The buccal tablets were compressed as quarter inch diameter biconvex tablets, whereas the sublingual tablets were three-eighths inch diameter biconvex tablets. These dimensions were chosen to give a comfortable fit in the respective part of the oral cavity for which they were designed. The formulae for these tablets are as follows:

| FORMULATION | COMPONENT NAME | QUANTITY (MG) |
|---|---|---|
| BUCCAL | Prochlorperazine | 5.00 |
| | Sodium Bicarbonate | 15.52 |
| | Citric Acid, Anhydrous | 11.08 |
| | Sodium Bicarbonate | 45.78 |
| | HPMC K4M Prem | 5.00 |
| | Dicalcium phosphate dihydrate | 5.00 |
| | Mannitol | 11.67 |
| | Magnesium Stearate | 0.95 |
| | Total | 100.00 |
| SUBLINGUAL | Prochlorperazine | 5.00 |
| | Sodium Bicarbonate | 61.25 |
| | Citric Acid, Anhydrous | 43.75 |
| | Sodium Bicarbonate | 95 |
| | Sodium carbonate | 91.25 |
| | HPMC Methocel K4M Prem | 40 |

US 6,200,604 B1

7

8

-continued

| FORMULATION | COMPONENT NAME | QUANTITY (MG) |
|---|---|---|
| | Mannitol | 60 |
| | Magnesium Stearate | 3.75 |
| | Total | 400 |

What is claimed is:

1. A method of administering at least one systemically distributable pharmaceutical agent across the oral mucosa comprising:

a) providing a solid oral dosage form including a pharmaceutically effective amount of an orally administerable medicament; and at least one effervescent agent in an amount sufficient to increase absorption of said orally administerable medicament across the oral mucosa; wherein said orally administerable medicament is not substantially encompassed by or dispersed in a material that prevents absorption of said medicament across the oral mucosa;

b) placing said solid oral dosage form in the mouth of a patient so that saliva in said patient's mouth activates said at leant one effervescent agent in said tablet; and

c) holding said solid oral dosage form and the dissolving contents of said solid oral dosage form it the mouth of a patient whereby said at least one effervescent agent promotes absorption of said orally administerable medicament across the oral mucosa.

2. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 wherein said solid oral dosage form further includes at least one pH adjusting substance.

3. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2 wherein said step c) includes holding said solid oral dosage form and the dissolving contents of said solid oral dosage form in said mouth adjacent a cheek for buccal administration.

4. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2 wherein said step c) includes holding said solid oral dosage form and the dissolving contents of said solid oral dosage form in said mouth beneath the tongue for sublingual administration.

5. The method of administering at least one systemically distributable pharmaceutical agent according to claim or 1 or 2 wherein said stop c) includes holding said solid oral dosage form and the dissolving contents of said solid oral dosage form in said mouth between the upper lip and gum for gingival administration.

6. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said solid oral dosage form further includes a bioadhesive, wherein said bioadhesive increases the contact time between said solid oral dosage form and the oral mucosa.

7. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said solid oral dosage form further includes glidants, lubricants, binders, sweeteners, flavoring and coloring components.

8. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said orally administerable medicament is selected from the group consisting of analgesics, anti-inflammatories, antipyretics, antibiotics, antimicrobials, laxatives, anorexics, antihistamines, antiasthmatics, antidiuretics, antiflatuents, anti-emetics, antimigraine agents, antispasmodics, sedatives, antihyperactives, antihypertensives, tranquilizers, decongestants, and beta blockers.

9. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said orally administerable medicament is selected from the group consisting of peptides, proteins and oligonucleotides.

10. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said at least one effervescent agent is present in an amount between about 5% by weight and 95% by weight.

11. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said at least one effervescent agent is present in an amount between about 30% by weight and 80% by weight.

12. The method of administering at least one systemically distributable pharmaceutical agent according to claim 1 or 2, wherein said at least one effervescent agent is present in an amount sufficient to evolve a gas in an amount between about 5 cm to about 30 cm.

*    *    *    *    *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,200,604 B1                                    Page 1 of 1
DATED         : March 13, 2001
INVENTOR(S)   : S. Indiran Pather et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 7,
Line 28, "it" should read -- in --.

Column 8,
Line 2, "claim or 1 or" should read -- claim 1 or --.

Signed and Sealed this

Eighteenth Day of October, 2005

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# COMPLAINT
# EXHIBIT B



US006974590B2

(12) **United States Patent**   (10) **Patent No.:**   **US 6,974,590 B2**

Pather et al.   (45) **Date of Patent:**   **Dec. 13, 2005**

(54) **SUBLINGUAL BUCCAL EFFERVESCENT**

(75) Inventors: **Sathasivan Indiran Pather**, Plymouth, MN (US); **Rajendra K. Khankari**, Maple Grove, MN (US); **Jonathan D. Eichman**, Ann Arbor, MI (US); **Joseph R. Robinson**, Madison, WI (US); **John Hontz**, Plymouth, MN (US)

(73) Assignee: **Cima Labs Inc.**, Minneapolis, MN (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/080,016**

(22) Filed: **Feb. 20, 2002**

(65) **Prior Publication Data**

US 2002/0110578 A1 Aug. 15, 2002

**Related U.S. Application Data**

(63) Continuation of application No. 09/661,693, filed on Sep. 14, 2000, which is a continuation of application No. 09/327,814, filed on Jun. 8, 1999, now Pat. No. 6,200,604, which is a continuation of application No. 09/277,424, filed on Mar. 26, 1999, now abandoned.

(60) Provisional application No. 60/079,652, filed on Mar. 27, 1998.

(51) Int. Cl.$^7$ ............................ A61K 9/20; A61K 9/46; A61K 31/445

(52) U.S. Cl. .................. 424/466; 424/464; 424/465; 424/715; 424/717; 514/315; 514/317; 514/329

(58) Field of Search ...................... 424/464, 465, 424/466, 715, 717; 514/315, 317, 329

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,262,888 A | 4/1918 | Preble et al. | |
| 3,577,490 A | 5/1971 | Welsh et al. | |
| 3,888,976 A | 6/1975 | Milvy et al. | |
| 3,961,041 A | 6/1976 | Nishimura et al. | |
| 3,972,995 A | 8/1976 | Tsuk et al. | |
| 4,147,768 A | 4/1979 | Shaffer et al. | |
| 4,187,286 A | 2/1980 | Marcus | |
| 4,289,751 A | 9/1981 | Windheuser | |
| 4,493,848 A | 1/1985 | LaHann et al. | |
| 4,503,031 A | 3/1985 | Glassman | |
| 4,599,342 A * | 7/1986 | LaHann .................. 514/282 |
| 4,639,368 A | 1/1987 | Niazi et al. | |
| 4,671,953 A * | 6/1987 | Stanley et al. .............. 424/440 |
| 4,756,710 A | 7/1988 | Bondi et al. | |
| 4,853,211 A | 8/1989 | Kurobe et al. | |
| 5,002,771 A | 3/1991 | Purkaystha et al. | |
| 5,028,411 A | 7/1991 | Callingham et al. | |
| 5,053,396 A * | 10/1991 | Blass .................. 514/45 |
| 5,073,374 A * | 12/1991 | McCarty .................. 424/435 |
| 5,135,752 A | 8/1992 | Snipes | |
| 5,178,878 A | 1/1993 | Wehling et al. | |
| 5,223,264 A | 6/1993 | Wehling et al. | |
| 5,458,879 A | 10/1995 | Singh et al. | |
| 5,468,501 A | 11/1995 | Schaeffer | |
| 5,503,846 A | 4/1996 | Wehling et al. | |

| | | | |
|---|---|---|---|
| 5,559,096 A | 9/1996 | Edwards et al. | |
| 5,607,697 A | 3/1997 | Alkire et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0 197 504 A1 | 10/1986 | |
| EP | 0 354 973 B2 | 2/1990 | |
| EP | 0361680 A2 * | 4/1990 | |
| GB | 2307857 A * | 6/1997 | |
| WO | WO 91/04757 | 4/1991 | |
| WO | WO 95/27482 A1 * | 10/1995 | |
| WO | WO-95/34291 A1 | 12/1995 | |
| WO | WO 96/29993 | 10/1996 | |
| WO | WO-97/17067 A1 | 5/1997 | |
| WO | WO 99/49842 | 10/1999 | |
| WO | WO 00/35418 | 6/2000 | |

OTHER PUBLICATIONS

James W. Conine, Special Tablets, in Pharmaceutical Dosage Forms: Tablets vol. 1, 329 (Herbert A. Lieberman et al. eds, 1989).

Alternative Routes of Drug Administration—Advantages and Disadvantages (Subject Review), American Academy of Pediatrics Committee on Drugs, Pediatrics, vol. 100, No. 1 Jul. 1997, 143, 147.

Squier, C.A., and Wertz, P.W., "Structure and Function of the Oral Mucosa and Implications for Drug Delivery" *Oral Mucosal Drug Delivery*, Ch. 1, pp. 1–19 (1996).

Wertz et al. "Biochemical Basis of the Permeability Barrier in Skin and Oral Mucosa" *Oral Mucosal Drug Delivery*, Ch. 2, pp. 27–41 (1996).

Zhang, H., and Robinson, J.R., "Routes of Drug Transport Across Oral Mucosa" *Oral Mucosal Drug Delivery*, Ch. 3, pp. 51–61 (1996).

Aungst, B.J., "Oral Mucosal Permeation Enhancement: Possibilities and Limitations" *Oral Mucosal Drug Delivery*, Ch. 4, pp. 65–81 (1996).

Zhang, H., and Robinson, J.R., "In Vitro Methods for Measuring Permeability of the Oral Mucosa" *Oral Mucosal Drug Delivery*, Ch. 5, pp. 85–97 (1996).

Audus, K.L., "Buccal Epithelial Cell Cultures as a Model to Study Oral Mucosal Drug Transport and Metabolism" *Oral Mucosal Drug Delivery*, Ch. 6, pp. 101–115 (1996).

(Continued)

*Primary Examiner*—Gary Kunz

*Assistant Examiner*—Marina Lamm

(74) *Attorney, Agent, or Firm*—Lerner, David, Littenberg, Krumholz & Mentlik, LLP

(57) **ABSTRACT**

A pharmaceutical dosage form adapted to supply a medicament to the oral cavity for buccal, sublingual or gingival absorption of the medicament which contains an orally administerable medicament in combination with an effervescent for use in promoting absorption of the medicament in the oral cavity. The use of an additional pH adjusting substance in combination with the effervescent for promoting the absorption drugs is also disclosed.

**9 Claims, No Drawings**

US 6,974,590 B2

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,624,687 A | 4/1997 | Yano et al. | |
| 5,626,866 A | 5/1997 | Ebert et al. | |
| 5,646,151 A | 7/1997 | Kruse et al. | |
| 5,656,284 A | 8/1997 | Balkin | |
| 5,853,748 A | 12/1998 | New | |
| 5,900,252 A | 5/1999 | Calanchi et al. | |
| 5,952,004 A | 9/1999 | Rudnic et al. | |
| 5,958,455 A | 9/1999 | Roser et al. | |
| 5,958,458 A | 9/1999 | Norling et al. | |
| 6,034,085 A | 3/2000 | Joshi et al. | |
| 6,068,853 A | 5/2000 | Giannos et al. | |
| 6,071,539 A | * 6/2000 | Robinson et al. | 424/466 |
| 6,117,912 A | 9/2000 | DiSanto | |
| 6,129,906 A | 10/2000 | Steventon | |
| 6,200,604 B1 | 3/2001 | Pather et al. | |
| 6,242,002 B1 | 6/2001 | Tritthart et al. | |
| 6,264,981 B1 | 7/2001 | Zhang et al. | |
| 6,316,027 B1 | 11/2001 | Johnson et al. | |
| 6,326,360 B1 | 12/2001 | Kanazawa et al. | |
| 6,326,384 B1 | 12/2001 | Whittle et al. | |
| 6,350,470 B1 | 2/2002 | Pather et al. | |
| 6,391,335 B1 | 5/2002 | Pather et al. | |
| 6,488,961 B1 | * 12/2002 | Robinson et al. | 424/466 |
| 6,509,036 B2 | 1/2003 | Pather et al. | |
| 6,576,250 B1 | 6/2003 | Pather et al. | |

## OTHER PUBLICATIONS

Rathbone et al. "In Vivo Techniques for Studying the Oral Mucosal Absorption Characteristics of Drugs in Animals and Humans" *Oral Mucosal Drug Delivery*, Ch. 7, pp. 121–151 (1996).

Weatherell et al., "The Flow of Saliva and its Influence on the Movement, Deposition, and Removal of Drugs Administered to the Oral Cavity" *Oral Mucosal Drug Delivery*, Ch. 8, pp. 157–187 (1996).

Schenkels et al., "Salivary Mucins: Their Role in Oral Mucosal Barrier Function and Drug Delivery" *Oral Mucosal Drug Delivery*, Ch. 9, pp. 191–211 (1996).

Eichman, J.D., Thesis "Mechanistic Studies on Effervescent–Induced Permeability Enhancement" (catalogued at the University of Wisconsin–Madison on Sep. 18, 1998) (on file with the University of Wisconsin–Madison).

Rassing, R., "Specialized Oral Mucosal Drug Delivery Systems: Chewing Gum" *Oral Mucosal Drug Delivery*, Ch. 13, pp. 319–353 (1996).

Soskolone, W.A., and Friedman, M., "Intra–periodontal Pocket Drug Delivery Systems" *Oral Mucosal Drug Delivery*, Ch. 14, pp. 359–373 (1996).

Eichman, J.D., and Robinson, J.R., "Mechanistic Studies on Effervescent–Induced Permeability Enhancement" Pharm. Res. 15(6):925–30 (1998).

Kellaway, I.W., and Warren S.J., "Mucoadhesive Hydrogels for Buccal Delivery" *Oral Mucosal Drug Delivery*, Ch. 10, pp. 221–237 (1996).

Rathbone et al., "Systemic Oral Mucosal Drug Delivery and Delivery Systems" *Oral Mucosal Drug Delivery*, Ch. 11, pp. 241–275 (1995).

DeGrande et al., "Specialized Oral Mucosal Drug Delivery Systems: Patches" *Oral Mucosal Drug Delivery*, Ch. 12, pp. 285–313 (1998).

Ranade, V.V.; Drug Delivery Systems Part 5B. Oral Drug Delivery, The Journal of Clinical Pharmacology, Feb. 1991, pp. 98–115, vol. 31.

Giannos, S.A.; Dinh, S.M.; Berner, B.; Temporally Controlled Drug Delivery Systems: Coupling of pH Oscillators with Membrane Diffusion, Journal of Pharmaceutical Sciences, May 1995, pp. 539–543, vol. 84, No. 5.

Amighi, K.; Timmermans, J.; Puigdevall, J.; Baltes, E.; Moës, A.. J.; Peroral Sustained–Released Film–Coated Pellets as a Means to Overcome Physicochemical and Biological Drug–Related Problems. I. In Vitro Development and Evaluation, Drug Development and Industrial Pharmacy, 1998, pp. 509–515, vol. 24, no. 6.

Sorasuchart, W.; Wardrop, J.; Ayers, J.; Drug Release from Spray Layered and Coated Drug–Containing Beads: Effects of pH and Comparison of Different Dissolution Methods, Drug Development and Industrial Pharmacy, 1999, pp. 1093–1098, vol. 25, No. 10.

Berko, S.; Regdon Jun, G.; Erös, I.; Influence of pH Change on Drug Release from Rectal Suppositories, Die Pharmazie, Apr. 2000, p. 324, vol. 55., Govi–Verlag Pharmazeutischer Verlag GmbH, Eschborn.

Streubel, A.; Siepmann, J.; Dashevsky, A.; Bodmeier, R.; pH–Independent Release of a Weakly Basic Drug from Water–Insoluble and –Soluble Matrix Tablets, Journal of Controlled Release, 2000, pp. 101–110, vol. 67.

Sasahara et al., "Dosage Form Design for Improvement of Bioavailibity of Levodopa IV: Possible Causes of Low Bioavailability of Oral Levodopa in Dogs" J. Pharm. Sci. 70(7):730–33 (1981).

Nishimura et al., "Dosage Form Design for Improvement of Bioavailability of Levodopa VI: Formulation of Effervescent Enteric–Coated Tablets" J. Pharm. Sci. 73(7):942–46 (1984).

* cited by examiner

US 6,974,590 B2

**1**

# SUBLINGUAL BUCCAL EFFERVESCENT

## CROSS-REFERENCE TO RELATED APPLICATIONS

The present application is a continuation of U.S. patent application Ser. No. 09/661,693, incorporated herein by reference, filed Sep. 14, 2000, which is a continuation of U.S. patent application Ser. No. 09/327,814, filed Jun. 8, 1999, now U.S. Pat. No. 6,200,604, incorporated herein by reference, which is a continuation of U.S. patent application Ser. No. 09/277,424, filed Mar. 26, 1999, now abandoned, incorporated herein by reference, which claims the benefit of the U.S. Provisional Application No. 60/079,652, filed on Mar. 27, 1998, incorporated by reference herein.

## FIELD OF THE INVENTION

The present invention relates to pharmaceutical compositions, and more particularly to pharmaceutical compositions for oral administration of a medicament, which contain an effervescent agent for enhancing oral drug absorption across the buccal, sublingual, and gingival mucosa.

## BACKGROUND OF THE INVENTION

Effervescents have been shown to be useful and advantageous for oral administration. See Pharmaceutical Dosage Forms: Tablets Volume I, Second Edition. A. Lieberman. ed. 1989, Marcel Dekker, Inc. As discussed in this text, and as commonly employed, an effervescent tablet is dissolved in water to provide a carbonated or sparkling liquid drink. See also U.S. Pat. Nos. 5,102,665 and 5,468,504 to Schaeffer, herein incorporated by reference. In such a drink, the effervescent helps to mask the taste of medicaments.

Effervescent compositions have also been employed for use as taste masking agents in dosage forms which are not dissolved in water prior to administration. For example, U.S. Pat. No. 4,639,368 describes a chewing gum containing a medicament capable of absorption through the buccal cavity and containing a taste masking amount of an effervescent.

More recently effervescents have been employed to obtain rapid dissolution and/or dispersion of the medicament in the oral cavity. See U.S. Pat. Nos. 5,178,878 and 5,223,264. The effervescent tends to stimulate saliva production thereby providing additional water to aid in further effervescent action. These dosage forms give an agreeable presentation of the drug, particularly for patients who have difficulty in swallowing tablets or capsules. PCT application WO 97/06786 describes pre-gastric absorption of certain drugs using rapidly-disbursing dosage forms.

Various proposals have been advanced for oral mucosal administration of various drugs. When drugs are absorbed from the oral mucosa, they bypass the gastrointestinal and hepatic metabolism process. This can lead to a faster onset of action and/or improved bioavailability of a drug. However, many compounds do not rapidly penetrate the oral mucosa. See, e.g., Christina Graffner, Clinical Experience with Novel Buccal and Sublingual Administration; NOVEL DRUG DELIVERY AND ITS THERAPEUTIC APPLICATION, edited by L. F. Prescott and W. S. Nimmo (1989); David Harris & Joseph R. Robinson, Drug Delivery via the Mucous Membranes of the Oral Cavity; JOURNAL OF PHARMACEUTICAL SCIENCES, Vol. 81 (Jan. 1992); Oral Mucosal Delivery, edited by M. J. Rathbone, which are herein incorporated by reference. The compounds which may be well absorbed per-orally (through the gastrointesti-

**2**

nal tract) may not be well absorbed through the mucosa of the mouth because the oral mucosa is less permeable than the intestinal mucosa and it does not offer as big a surface area as the small intestine.

Despite these and other efforts toward increasing the permeation of medicaments across the oral mucosa, there have been unmet needs for improved methods of administrating medicaments across the oral mucosa.

## SUMMARY OF THE INVENTION

The pharmaceutical compositions of the present invention comprise an orally administrable medicament in combination with an effervescent agent used as penetration enhancer to influence the permeability of the medicament across the buccal, sublingual, and gingival mucosa.

## DETAILED DESCRIPTION OF THE INVENTION

One aspect of this invention is to use effervescent as penetration enhancers for influencing oral drug absorption. Effervescent agents can be used alone or in combination with other penetration enhancers, which leads to an increase in the rate and extent of absorption of an active drug. It is believed that such increase can rise from one or all of the following mechanisms:

  1. reducing the mucosal layer thickness and/or viscosity;
  2. tight junction alteration;
  3. inducing a change in the cell membrane structure; and
  4. increasing the hydrophobic environment within the cellular membrane.

The present dosage forms should include an amount of an effervescent agent effective to aid in penetration of the drug across the oral mucosa. Preferably, the effervescent is provided in an amount of between about 5% and about 95% by weight, based on the weight of the finished tablet, and more preferably in an amount of between about 30% and about 80% by weight. It is particularly preferred that sufficient effervescent material be provided such that the evolved gas is more than about 5 $cm^3$ but less than about 30 $cm^3$, upon exposure of the tablet to an aqueous environment. However, the amount of effervescent agent must be optimized for each specific drug.

The term "effervescent agent" includes compounds which evolve gas. The preferred effervescent agents evolve gas by means of a chemical reaction which takes place upon exposure of the effervescent agent (an effervescent couple) to water and/or to saliva in the mouth. This reaction is most often the result of the reaction of a soluble acid source and a source of carbon dioxide such as an alkaline carbonate or bicarbonate. The reaction of these two general compounds produces carbon dioxide gas upon contact with water or saliva. Such water-activated materials must be kept in a generally anhydrous state and with little or no absorbed moisture or in a stable hydrated form, since exposure to water will prematurely disintegrate the tablet. The acid sources may be any which are safe for human consumption and may generally include food acids, acid and hydrite antacids such as, for example: citric, tartaric, amalic, fumeric, adipic, and succinics. Carbonate sources include dry solid carbonate and bicarbonate salt such as, preferably, sodium bicarbonate, sodium carbonate, potassium bicarbonate and potassium carbonate, magnesium carbonate and the like. Reactants which evolve oxygen or other gasses and which are safe for human consumption are also included.

The effervescent agent(s) of the present invention is not always based upon a reaction which forms carbon dioxide.

US 6,974,590 B2

3

Reactants which evolve oxygen or other gasses which are safe for human consumption are also considered within the scope. Where the effervescent agent includes two mutually reactive components, such as an acid source and a carbonate source, it is preferred that both components react completely. Therefore, an equivalent ratio of components which provides for equal equivalents is preferred. For example, if the acid used is diprotic, then either twice the amount of a mono-reactive carbonate base, or an equal amount of a di-reactive base should be used for complete neutralization to be realized. However, in other embodiments of the present invention, the amount of either acid or carbonate source may exceed the amount of the other component. This may be useful to enhance taste and/or performance of a tablet containing an overage of either component. In this case, it is acceptable that the additional amount of either component may remain unreacted.

The present dosage forms may also include in amounts additional to that required for effervescence a pH adjusting substance. For drugs that are weakly acidic or weakly basic, the pH of the aqueous environment can influence the relative concentrations of the ionized and unionized forms of the drug present in solution according to the Henderson-Hasselbach equation. The pH solutions in which an effervescent couple has dissolved is slightly acidic due to the evolution of carbon dioxide. The pH of the local environment, e.g., saliva in immediate contact with the tablet and any drug that may have dissolved from it, may be adjusted by incorporating in the tablet a pH adjusting substances which permit the relative portions of the ionized and unionized forms of the drug to be controlled. In this way, the present dosage forms can be optimized for each specific drug. If the unionized drug is known or suspected to be absorbed through the cell membrane (transcellular absorption) it would be preferable to alter the pH of the local environment (within the limits tolerable to the subject) to a level that favors the unionized form of the drug. Conversely, if the ionized form is more readily dissolved the local environment should favor ionization.

The aqueous solubility of the drug should preferably not be compromised by the effervescent and pH adjusting substance, such that the dosage forms permit a sufficient concentration of the drug to be present in the unionized form. The percentage of the pH adjusting substance and/or effervescent should therefore be adjusted depending on the drug.

Suitable pH adjusting substance for use in the present invention include any weak acid or weak base in amounts additional to that required for the effervescence or, preferably, any buffer system that is not harmful to the oral mucosa. Suitable pH adjusting substance for use in the present invention include, but are not limited to, any of the acids or bases previously mentioned as effervescent compounds, disodium hydrogen phosphate, sodium dihydrogen phosphate and the equivalent potassium salt.

The active ingredient suitable for use in the present dosage forms can include systematically distributable pharmaceutical ingredients, vitamins, minerals, dietary supplements, as well as non-systematically distributable drugs. Preferably, the active ingredient is a systemically active pharmaceutical ingredient which is absorbable by the body through the oral mucosa. Although the dosage forms can be employed with a wide range of drugs, as discussed below, it is especially suitable for drugs and other pharmaceutical ingredients which suffer significant loss of activity in the lumen of the gastrointestinal tract or in the tissues of the gastrointestinal tract during absorption process or upon

4

passage through the liver after absorption in the intestinal tract. Absorption through the oral mucosa allows the drug to enter the systemic circulation without first passing through the liver, and thus alleviates the loss of activity upon passage through the liver.

Pharmaceutical ingredients may include, without limitation, analgesics, anti-inflammatories, antipyretics, antibiotics, antimicrobials, laxatives, anorexics, antihistamines, antiasthmatics, antidiuretics, antiflatuents, antimigraine agents, antispasmodics, sedatives, antihyperactives, antihypertensives, tranquilizers, decongestants, beta blockers; peptides, proteins, oligonucleotides and other substances of biological origin, and combinations thereof. Also encompassed by the terms "active ingredient(s)", "pharmaceutical ingredient(s)" and "active agents" are the drugs and pharmaceutically active ingredients described in Mantelle, U.S. Pat. No. 5,234,957, in columns 18 through 21. That text of Mantelle is hereby incorporated by reference. Alternatively or additionally, the active ingredient can include drugs and other pharmaceutical ingredients, vitamins, minerals and dietary supplements as the same are defined in U.S. Pat. No. 5,178,878, the disclosure of which is also incorporated by reference herein.

The dosage form preferably includes an effervescent couple, in combination with the ingredients to enhance the absorption of the pharmaceutical ingredient across the oral mucosa and to improve the disintegration profile and the organoleptic properties of the dosage form. For example, the area of contact between the dosage form and the oral mucosa, and the residence time of the dosage form in the oral cavity can be improved by including a bioadhesive polymer in this drug delivery system. See, e.g., Mechanistic Studies on Effervescent-Induced Permeability Enhancement by Jonathan Eichman (1997), which is incorporated by reference herein. Effervescence, due to its mucus stripping properties, would also enhance the residence time of the bioadhesive, thereby increasing the residence time for the drug absorption. Non-limiting examples of bioadhesives used in the present invention include, for example, Carbopol 934 P, Na CMC, Methocel, Polycarbophil (Noveon AA-1), HPMC, Na alginate, Na Hyaluronate and other natural or synthetic bioadhesives.

In addition to the effervescence-producing agents, a dosage form according to the present invention may also include suitable non-effervescent disintegration agents. Non-limiting examples of non-effervescent disintegration agents include: microcrystalline, cellulose, croscarmelose sodium, crospovidone, starches, corn starch, potato starch and modified starches thereof, sweeteners, clays, such as bentonite, alginates, gums such as agar, guar, locust bean, karaya, pecitin and tragacanth. Disintegrants may comprise up to about 20 weight percent and preferably between about 2 and about 10% of the total weight of the composition.

In addition to the particles in accordance with the present invention, the dosage forms may also include glidants, lubricants, binders, sweeteners, flavoring and coloring components. Any conventional sweetener or flavoring component may be used. Combinations of sweeteners, flavoring components, or sweeteners and flavoring components may likewise be used.

Examples of binders which can be used include acacia, tragacanth, gelatin, starch, cellulose materials such as methyl cellulose and sodium carboxy methyl cellulose, alginic acids and salts thereof, magnesium aluminum silicate, polyethylene glycol, guar gum, polysaccharide acids, bentonites, sugars, invert sugars and the like. Binders may be used in an amount of up to 60 weight percent and preferably about 10 to about 40 weight percent of the total composition.

US 6,974,590 B2

5

Coloring agents may include titanium dioxide, and dyes suitable for food such as those known as F.D.& C. dyes and natural coloring agents such as grape skin extract, beet red powder, beta-carotene, annato, carmine, turmeric, paprika, etc. The amount of coloring used may range from about 0.1 to about 3.5 weight percent of the total composition.

Flavors incorporated in the composition may be chosen from synthetic flavor oils and flavoring aromatics and/or natural oils, extracts from plants, leaves, flowers, fruits and so forth and combinations thereof. These may include cinnamon oil, oil of wintergreen, peppermint oils, clove oil, bay oil, anise oil, eucalyptus, thyme oil, cedar leave oil, oil of nutmeg, oil of sage, oil of bitter almonds and cassia oil. Also useful as flavors are vanilla, citrus oil, including lemon, orange, grape, lime and grapefruit, and fruit essences, including apple, pear, peach, strawberry, raspberry, cherry, plum, pineapple, apricot and so forth. Flavors which have been found to be particularly useful include commercially available orange, grape, cherry and bubble gum flavors and mixtures thereof. The amount of flavoring may depend on a number of factors, including the organoleptic effect desired. Flavors may be present in an amount ranging from about 0.05 to about 3 percent by weight based upon the weight of the composition. Particularly preferred flavors are the grape and cherry flavors and citrus flavors such as orange.

One aspect of the invention provides a solid, oral tablet dosage form suitable for sublingual, buccal, and gingival administration. Excipient fillers can be used to facilitate tableting. The filler desirably will also assist in the rapid dissolution of the dosage form in the mouth. Non-limiting examples of suitable fillers include: mannitol, dextrose, lactose, sucrose, and calcium carbonate.

Method of Manufacture

Tablets can either be manufactured by direct compression, wet granulation or any other tablet manufacturing technique. See, e.g., U.S. Pat. Nos. 5,178,878 and 5,223,264, which are incorporated by reference herein. The tablet may be a layered tablet consisting of a layer of the active ingredient sandwiched between a bioadhesive layer and an effervescence layer. Other layered forms which include the ingredients set forth above in layers of diverse compositions.

Effervescence Level: Between 5%–95%

Tablet size: Between 3/16"–5/8"

Tablet hardness: Between 5N and 80N

Route of administration: Sublingual, Buccal, Gingival

The dosage form may be administered to a human or other mammalian subject by placing the dosage form in the subject's mouth and holding it in the mouth, either adjacent a cheek (for buccal administration), beneath the tongue (for sublingual administration) and between the upper lip and gum (for gingival administration). The dosage form spontaneously begins to disintegrate due to the moisture in the mouth. The disintegration, and particularly the effervescence, stimulates additional salivation which further enhances disintegration.

EXAMPLE 1

The dosage form should include Fentanyl, an effervescent and pH adjusting substance so that the pH is adjusted to neutral (or slightly higher) since the pKa of fentanyl is 7.3. At this pH, the aqueous solubility of this poorly water-soluble drug would not be compromised unduly, and would permit a sufficient concentration of the drug to be present in the unionized form.

Two fentanyl formulations, each containing 36% effervescence, were produced. These tablets were compressed using half-inch shallow concave punches.

6

| FORMULATION | COMPONENT | QUANTITY (MG) |
|---|---|---|
| SHORT DISINTEGRATION TIME | Fentanyl, citrate, USP | 1.57 |
| | Lactose monohydrate | 119.47 |
| | Microcrystalline Cellulose, Silicified | 119.47 |
| | Sodium carbonate, anhydrous | 46.99 |
| | Sodium bicarbonate | 105 |
| | Citric acid, anhydrous | 75 |
| | Polyvinylphrrolidone, cross-linked | 25 |
| | Magnesium stearate | 5 |
| | Colloidal silicon dioxide | 2.5 |
| | Total tablet mass | 500 |
| LONG DISINTEGRATION TIME | Fentanyl citrate, USP | 1.57 |
| | Lactose monohydrate | 270.93 |
| | Sodium carbonate, anhydrous | 40.00 |
| | Sodium bicarbonate | 105 |
| | Citric acid, anhydrous | 75 |
| | Magnesium stearate | 5 |
| | Colloidal silicon dioxide | 2.5 |
| | Total tablet mass | 500 |

EXAMPLE 2

The dosage form included prochlorperazine (pKa=8.1), an effervescent and pH adjusting substance so that a slightly higher pH is produced to facilitate the permeation enhancement.

With respect to prochlorperazine, an anti-emetic drug, two formulations, buccal and sublingual, were developed. The buccal tablets were compressed as quarter inch diameter biconvex tablets, whereas the sublingual tablets were three-eighths inch diameter biconvex tablets. These dimensions were chosen to give a comfortable fit in the respective part of the oral cavity for which they were designed. The formulae for these tablets are as follows:

| FORMULATION | COMPONENT NAME | QUANTITY (MG) |
|---|---|---|
| BUCCAL | Prochlorperazine | 5.00 |
| | Sodium Bicarbonate | 15.52 |
| | Citric Acid, Anhydrous | 11.08 |
| | Sodium Bicarbonate | 45.78 |
| | HPMC K4M Prem | 5.00 |
| | Dicalcium phosphate dihydrate | 5.00 |
| | Mannitol | 11.67 |
| | Magnesium Stearate | 0.95 |
| | Total | 100.00 |
| SUBLINGUAL | Prochlorperazine | 5.00 |
| | Sodium Bicarbonate | 61.25 |
| | Citric Acid, Anhydrous | 43.75 |
| | Sodium Bicarbonate | 95 |
| | Sodium carbonate | 91.25 |
| | HPMC Methocel K4M Prem | 40 |
| | Mannitol | 60 |
| | Magnesium Stearate | 3.75 |
| | Total | 400 |

US 6,974,590 B2

7

8

What is claimed is:

1. A method of administration of fentanyl to a mammal across the oral mucosa thereof, said method comprising: providing a solid oral dosage form comprising fentanyl or a pharmaceutically acceptable salt thereof and at least one saliva activated effervescent agent in an amount sufficient to increase absorption of said fentanyl or pharmaceutically acceptable salt thereof across said oral mucosa, at least one pH adjusting substance, and wherein said amount of said at least one effervescent agent is between about 5% by weight and about 80% by weight; and buccally, sublingually or gingivally administrating said solid oral dosage form to said mammal.

2. The method of claim 1, wherein said fentanyl or pharmaceutically acceptable salt thereof is administered via a buccal route.

3. The method of claim 1, wherein said fentanyl or pharmaceutically acceptable salt thereof is administered via a sublingual route.

4. The method of claim 1, wherein said fentanyl or a pharmaceutically acceptable salt thereof is administered via a gingival route.

5. The method of claim 1, wherein said mammal is a human.

6. The method of claim 1, wherein said dosage form is a tablet.

7. The method of claim 1, wherein said pH adjusting substance is a base.

8. The method of claim 1, wherein the amount of said pH adjusting substance is selected to provide a substantially neutral pH at a site of said absorption through said oral mucosa.

9. The method of claim 8, wherein said substantially neutral pH is slightly higher than 7.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,974,590 B2                                   Page 1 of 1
DATED         : December 13, 2005
INVENTOR(S)   : S. Indiran Pather et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 2,
Line 19, after "effervescent" insert -- agents --.

Column 3,
Lines 47 and 51, "substance" should read -- substances --.

Signed and Sealed this

Twenty-fifth Day of April, 2006



JON W. DUDAS
*Director of the United States Patent and Trademark Office*

🖎AO 85 (Rev. 8/98)  Notice, Consent, and Order of Reference — Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

District of **DELAWARE**

NOTICE, CONSENT, AND ORDER OF REFERENCE —
EXERCISE OF JURISDICTION BY A UNITED STATES
MAGISTRATE JUDGE

Plaintiff
V.

Case Number:

Defendant

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party Represented | Signatures | Date |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to _____
United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

_____          _____
Date                                                    United States District Judge

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CEPHALON, INC.,<br>and CIMA LABS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WATSON  PHARMACEUTICALS, INC.,<br>and WATSON LABORATORIES, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action. No. _____

## DISCLOSURE STATEMENT OF CEPHALON, INC.

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff Cephalon, Inc.

makes the following Corporate Disclosure Statement:

1)    Cephalon, Inc. has no parent corporation.

2)    No publicly held company owns 10% or more of the stock of Cephalon, Inc.

Respectfully submitted,

FISH & RICHARDSON, P.C.

*William J. Marsden, Jr.*
By DEM

William J. Marsden, Jr. (#2247)
Douglas E. McCann (#3852)
919 N. Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070
marsden@fr.com
dmccann@fr.com

Attorneys for Plaintiffs

DATED:      June 2, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CEPHALON, INC.,<br>and CIMA LABS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WATSON PHARMACEUTICALS, INC.,<br>and WATSON LABORATORIES, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action. No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

## DISCLOSURE STATEMENT OF CIMA LABS, INC.

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff Cima Labs, Inc.

makes the following Corporate Disclosure Statement:

1)      The parent corporation of Cima Labs, Inc. is Cephalon, Inc.

2)      Cephalon, Inc. owns 10% or more of the stock of Cima Labs, Inc.

Respectfully submitted,

FISH & RICHARDSON, P.C.

_William J. Marsden, Jr._  BY DEM
William J. Marsden, Jr. (#2247)
Douglas E. McCann (#3852)
919 N. Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070
marsden@fr.com
dmccann@fr.com

Attorneys for Plaintiffs

DATED:      June 2, 2008

# Exhibit B

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Watson Pharmaceuticals, Inc.
c/o Corporation Trust Company
of Nevada
6100 Neil Road, Suite 500
Reno, NV 89511

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X _____    ☐ Agent
                      ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail        ☐ Express Mail
   ☒ Registered            ☐ Return Receipt for Merchandise
   ☐ Insured Mail          ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number (Copy from service label)

RA 187 584 725 US

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Watson Laboratories, Inc
c/o Corporation Trust Company
of Nevada
6100 Neil Road, Suite 500
Reno, NV 89511

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X _____    ☐ Agent
                      ☒ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail        ☐ Express Mail
   ☒ Registered            ☐ Return Receipt for Merchandise
   ☐ Insured Mail          ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number (Copy from service label)

RA 187 584 711 US

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952