**REDACTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CEPHALON, INC. and CIMA LABS, INC.,

        Plaintiffs,

      v.

WATSON PHARMACEUTICALS, INC.,
WATSON LABORATORIES, INC., and
WATSON PHARMA, INC.

        Defendants.

Civil Action No. 08-330-SLR

**PUBLIC VERSION**

**Filed:  January 26, 2009**

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT WATSON PHARMACEUTICALS, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND (7)

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
marsden@fr.com
Douglas E. McCann (#3852)
dmccann@fr.com
Kyle Wagner Compton (#4693)
kcompton@fr.com
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax: (302) 652-0607

ATTORNEYS FOR PLAINTIFFS
CEPHALON, INC. AND CIMA LABS, INC.

OF COUNSEL:

Duane-David Hough
Michael Siem
FISH & RICHARDSON P.C.
Citigroup Center
52nd Floor
153 East 53rd Street
New York, NY  10022-4611
Tel: (212) 765-5070

Jonathan E. Singer
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 RBC Plaza
Minneapolis, MN  55402
Tel: (612) 335-5070

Dated:  January 16, 2009

## TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ...................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ...........................................3

    A.   The Parties .........................................................................................3

    B.   Background of the Litigation ................................................................3

III. SUMMARY OF THE ARGUMENT ................................................................4

IV.  CONCISE STATEMENT OF FACTS ............................................................5

    A.   Defendants' ANDA No. ........................................................................5

    B.   Defendants' Paragraph IV Letter to Cephalon ...........................................6

    C.   Operational Structure of Pharmaceuticals and its Subsidiaries ................7

    D.   Pharmaceuticals Leads, Oversees and is Part of the Generic Division...........................................................................................10

    E.   Pharmaceuticals, as Part of the Generics Division, Prepared and Submitted the ANDA...........................................................................13

    F.   Pharmaceuticals, as Overseer and Part of the Generic Division, Will Manufacture, Market and Sell the Generic FENTORA® Products...........................................................................................17

V.   ARGUMENT........................................................................................22

    A.   Pharmaceuticals' Motion to Dismiss Counts 1 through 6 for Failure to State a Claim Must Be Denied ................................................22

        1.   Pharmaceuticals Prepared and Submitted ANDA No. Within the Meaning of the Hatch-Waxman Act, and the Motion to Dismiss Counts 1 and 4 Must Be Denied ...................................................................................23

        2.   Pharmaceuticals is Also Liable for the Actions of Its Agent, Laboratories........................................................................29

        3.   Cephalon's Counts 2 and 5 for Induced Infringement are Proper Under 35 U.S.C. § 271(b) ..................................................31

        4.   Cephalon Does Not Allege that Pharmaceuticals Will Directly Infringe........................................................................33

    B.   Watson Pharmaceuticals' Request for Dismissal Pursuant to Fed. R. Civ. P.12(b)(7) Must Be Denied .................................................33

VI.  CONCLUSION.......................................................................................35

i

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Alcoa Inc. v. Alcan Inc.*
   495 F.Supp.2d 459 (D. Del. 2007)...................................................................34

*Allergan, Inc. v. Alcon Labs, Inc.*
   324 F.3d. 1322 (Fed. Cir. 2003)....................................................................27

*Amiot v. Kemper Ins. Co.*
   122 Fed.Appx. 577 (3d Cir. 2004)..................................................................23

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.*
   403 F.Supp.2d 484 (E.D. Va. 2005) ...............................................................26

*Dentsply Intern. Inc. v. Pentron Corp.*
   648 F.Supp. 856 (D. Del. 1986).....................................................................29

*Diaz v. Carroll*
   2007 WL 2154202 (D. Del. July 26, 2007) ....................................................23

*Forest Laboratories. Inc. v. Ivax Pharmaceuticals, Inc.*
   C.A. No. 03-891/04-1244-JJF (D. Del. Mar. 23, 2005)..............................32

*Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*
   501 F.3d 1263 (Fed. Cir. 2007).....................................................................32

*Human Genome Sciences, Inc. v. Amgen, Inc.*
   552 F.Supp.2d 466 (D. Del. 2008)..................................................................23

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*
   456 F.Supp. 831 (D. Del. 1978)...................................................:..............29

*Lum v. Bank of Am.*
   361 F.3d 217 (3d Cir. 2004)...........................................................................23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986)........................................................................................23

*Medtronic, Inc. v. Boston Scientific Corp.*
   2008 WL 4963420 (D. Del. Nov. 21, 2008) ..............................................22, 23

*Pfizer, Inc. v. Ranbaxy Labs., Ltd.*
   321 F.Supp.2d 612 (D. Del. 2004)..................................................................31

*SmithKline Beecham Corp. v. Geneva Pharm., Inc.*
   287 F.Supp.2d 576 (E.D. Pa. 2002) ...............................................................26

*SmithKline Beecham Corp. v. Pentech Pharms., Inc.* ................................................. 26
    2001 WL 184804 (N.D. Ill. Feb 20, 2001)

*Wyeth v. Lupin Ltd.*
    505 F.Supp.2d 303 (D. Md. 2007) ........................................................................ 26

*Venhill Ltd. P'ship ex rel. Stallkamp*
    2008 WL 2270488 (Del. Ch. 2008) ...................................................................... 29

## STATUTES

35 U.S.C. § 271(a) ..................................................................................................... 33

35 U.S.C. § 271(b) ................................................................................................. passim

35 U.S.C. §271(e) ................................................................................................. passim

## OTHER AUTHORITIES

Black's Law Dictionary, Seventh Ed. (1999) .............................................................. 12

Fed. R. Civ. P. 12(b)(2) ........................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................ passim

Fed. R. Civ. P. 12(b)(7) ........................................................................................ passim

Fed. R. Civ. P. 19 ....................................................................................................... 23

Fed. R. Civ. P. 33(d) ..................................................................................................... 7

Fed. R. Civ. P. 56(c) ............................................................................................... 2, 23

RESTATEMENT (THIRD) OF AGENCY § 4.04 (2006) ............................................ 29

## I.   INTRODUCTION

At the heart of Defendant Watson Pharmaceuticals, Inc.'s ("Pharmaceuticals") motion to dismiss this action is its repeated contention that it "did not have any involvement in the preparation and submission" of ANDA No.        (the "ANDA") by its wholly-owned subsidiary, Watson Laboratories, Inc. ("Laboratories," collectively with Pharmaceuticals, "Defendants"). (D.I. 14 at 7.) This keystone to Pharmaceuticals' argument does not withstand scrutiny.

The evidence demonstrates that Watson does not exist as a collective of independent corporations—as Pharmaceuticals implicitly argues in its opening brief—but instead that Watson operates as a unified enterprise headed by corporate parent Pharmaceuticals, organized into three operating divisions—Generic, Brand and Distribution.[1]  The interrelationship between and among the Watson entities runs deep, and in fact it is this divisional organization (Generic Brand, and Distribution), and not—as Defendants portray in their papers—the corporate entity structure that dictates what Watson resources will be directed to any given company project, including the ANDA at issue.  Indeed, it seems that one of the only contexts in which Watson attempts to define itself by reference to the separate corporate entity status of its subsidiaries, as opposed to its collaborative operating divisions, is in litigation here, as a basis for dismissing Cephalon's complaint.

The Generic Division is responsible for the development, regulatory approval, and sale of generic drugs, and draws resources from a cross-section of many Watson entities, including Pharmaceuticals and Laboratories.  Pharmaceuticals and many of its employees, as the overseer and as a part of the Generic Division, were involved in this project from the very beginning,

---

[1]   The Distribution division is sometimes referred to by its trade name "Anda."

starting with the choice of which brand drug to target for generic regulatory approval, through the ANDA drafting and submission, to the planned end-result: fentanyl citrate buccal tablets rolling off the assembly line, stamped with Pharmaceuticals' stock-ticker symbol ,"WPI".

Pharmaceuticals' direct involvement in the planning for, preparation and submission of the ANDA with a paragraph IV certification satisfies the requirements for a cause of action for infringement under the Hatch-Waxman Act. Pharmaceuticals' planned participation in the future manufacture, marketing, and sale of the product covered by the ANDA likewise satisfies the requirements for a cause of action for patent infringement. Accordingly, Plaintiffs Cephalon, Inc. ("Cephalon") and CIMA LABS, INC. ("CIMA"; collectively with Cephalon, "Plaintiffs") state a valid claim against Pharmaceuticals for both direct and induced infringement under the Hatch-Waxman Act, and Pharmaceuticals' motion to dismiss Counts 1, 2, 4, and 5 pursuant to Fed. R. Civ. P. 12(b)(6) should be denied,[2] regardless of whether the Court analyzes the motion under Rule 12(b)(6), or, if the Court considers—as it should—matters outside the pleadings, under Rule 56.

Pharmaceuticals also alleges that Laboratories is a required party to this litigation and so requests that the Court dismiss this case against Pharmaceuticals, should the Court determine that it does not have personal jurisdiction over Laboratories. (D.I. 14 at 9.) As discussed in Cephalon's concurrently-filed Brief in Opposition to Defendant Watson Laboratories, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and (6), this Court's exercise of personal jurisdiction over Laboratories is proper, and therefore Pharmaceuticals' motion to dismiss should be denied on that ground alone. In any event, because Pharmaceuticals is itself a proper

---

[2]   Pharmaceuticals also seeks dismissal of Counts 3 and 6. (D.I. 14 at 8.) This argument is solely premised on an inadvertent error in the caption of Counts 3 and 6 of the Complaint. Cephalon has filed an Amended Complaint concurrently with the filing of this opposition brief to correct the caption.

defendant under the provisions of the Hatch-Waxman Act, its motion pursuant to Fed. R. Civ. P. 12(b)(7) must be denied, even if the Court were to grant Laboratories' motion to dismiss.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

### A.    The Parties

Plaintiff Cephalon is a Delaware corporation having a principal place of business at 41 Moores Road, Frazer, Pennsylvania, 19355. Cephalon is an international biopharmaceutical company dedicated to the discovery, development, and commercialization of innovative products in four core therapeutic areas: central nervous system, pain, oncology, and addiction. Plaintiff CIMA is a Delaware corporation having a principal place of business at 7325 Aspen Lane, Brooklyn Park, Minnesota, 55428. CIMA is a worldwide leader in drug delivery technologies, and is a wholly-owned subsidiary of Cephalon. CIMA is the lawful owner by assignment of all rights, title, and interest in the patents-in-suit (as defined below). Cephalon is the sole licensee of the patents-in-suit.

Defendants Pharmaceuticals and Laboratories are Nevada corporations, co-located at 311 Bonnie Circle, Corona California, 92880. Defendant Watson Pharma, Inc. ("Watson Pharma") was added as a defendant to this litigation in the Amended Complaint filed by Plaintiffs on January 16, 2009. Watson Pharma is a Delaware corporation with a principal place of business in Morristown, New Jersey. Laboratories and Watson Pharma are wholly-owned subsidiaries of Pharmaceuticals.

### B.    Background of the Litigation

On June 2, 2008, plaintiffs Cephalon and CIMA LABS brought this suit for infringement of United States Patent Nos. 6,200,604 B1 ("the '604 patent") and 6,974,590 B2 ("the '590 patent") (collectively, the "patents-in-suit") against defendants Laboratories and Pharmaceuticals. (D.I.

3

1.)  On July 15, 2008, Laboratories moved to dismiss for lack of personal jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(2), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

(D.I. 15.)  Also on July 15, 2008, Pharmaceuticals moved to dismiss this action for failure to

state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for failure to join a

required party, pursuant to Fed. R. Civ. P. 12(b)(7).  (D.I. 12.)

The parties subsequently entered stipulations permitting Cephalon to engage in

jurisdictional discovery, and setting January 16, 2009, as the date by which Cephalon would file

its briefs in opposition to the Defendants' motions to dismiss.  (D.I. 23, 53, 63, 71.)  On January

16, 2009, Cephalon filed an Amended Complaint, adding certain allegations, correcting an

inadvertent pleading error in the caption of Counts 3 and 6 of the original Complaint, and

naming Watson Pharma as a defendant.[3]  This is Cephalon's brief in opposition to

Pharmaceuticals' Motion to Dismiss.

III.    **SUMMARY OF THE ARGUMENT**

1.    Cephalon has a cause of action under the Hatch-Waxman statute against
Pharmaceuticals for its direct involvement in the planning for, preparation and
submission of the ANDA, as itself a submitter and filer of the ANDA, and for the
actions of its agent, Laboratories.

2.    Cephalon's inducement claims against Pharmaceuticals are proper under 35
U.S.C. § 271(b).

3.    The sole basis for Pharmaceuticals' request that the Court dismiss Cephalon's
request for a declaratory judgment—an inadvertent pleading error in the caption
for Counts 3 and 6 of Cephalon's original Complaint—is moot in light of the
filing of Cephalon's Amended Complaint which corrects the caption to identify
§ 271(b) or (c), not (a).

---

[3]    Watson Pharma will distribute and sell products approved under ANDA No.         (D.I.
14 at 4–5 and Exhibit 2 (Brunner Decl.) at ¶ 20.)

4.    Because Cephalon has a cause of action against Pharmaceuticals for its direct
involvement in the planning for, preparation and submission of ANDA No.
. Laboratories is neither a necessary nor an indispensable party to this
litigation.

## IV.    CONCISE STATEMENT OF FACTS

### A.    Defendants' ANDA No. '

This lawsuit arises from the filing of Abbreviated New Drug Application No.          (the
"ANDA") with the U.S. Food and Drug Administration ("FDA") for approval to manufacture
and sell generic fentanyl citrate buccal tablets. (D.I. 1, ¶¶ 34–40.) Cephalon is the holder of an
approved New Drug Application ("NDA") No.          for FENTORA®-brand fentanyl citrate
buccal tablets. (D.I. 1, ¶ 33.) FENTORA® is used to treat "breakthrough pain in adult patients
with cancer (18 years of age and older) who are regularly using other opioid pain medicines
around-the-clock for their constant cancer pain." See http://www.fentora.com (last visited
January 7, 2009). In conjunction with the approval of NDA No.          Cephalon listed the '604
and '590 patents in the Approved Drug Products with Therapeutic Equivalence Evaluations (the
"Orange Book") for FENTORA®. (D.I. 1, ¶ 33.)

On          the Defendants filed the ANDA, covering          fentanyl
citrate buccal tables. (Exh. 1; Exh. 2.)[4] The fentanyl citrate buccal tablets for which the ANDA
seeks approval are purportedly generic equivalents of FENTORA®, and are covered by the '604
and '590 patents. (Exh. 3.) In connection with the ANDA, the Defendants filed a Paragraph IV
Patent Certification, asserting that the '604 and '590 patents are invalid, unenforceable, or will

---

[4]    Unless otherwise noted, all exhibits are attached to the Declaration of Kyle Wagner Compton
in Support of Plaintiffs' Brief in Opposition to Watson Pharmaceuticals, Inc.'s Motion to
Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and (7), filed concurrently herewith.

not be infringed by the manufacture, use, or sale of the proposed generic fentanyl citrate buccal tables.[5] (*Id.*)

**B.      Defendants' Paragraph IV Letter to Cephalon**

By identical copies of their letter dated April 15, 2008 (the "Paragraph IV Letter "), the Defendants notified Cephalon and CIMA of the filing of the ANDA and of the Defendants' Paragraph IV allegations.  (D.I. 14, Exhibit 2 (Brunner Decl.), Exhibit C.)  CIMA received its Paragraph IV Letter on or about April 21, 2008.  (D.I. 1, ¶ 35.)  Cephalon received its Paragraph IV Letter on or about April 22, 2008.  (*Id.*)  Cephalon filed this Hatch-Waxman lawsuit on June 2, 2008.  (D.I. 1.)

**REDACTED**

Pharmaceuticals seeks dismissal of this

---

[5]   The Defendants later filed amendments to the ANDA adding dosage strengths
(Exhs. 4-9.)

lawsuit on the ground that it is merely "a holding company" that was "not involved in preparing

or submitting the ANDA." (D.I. 14 at 4.) However, as Cephalon sets forth below,

Pharmaceuticals' contention that it is merely a holding company is not consistent with how it has

organized its operations in principle, nor with how it conducts its operations in practice. To the

contrary, evidence shows that Pharmaceuticals was directly involved in preparing and submitting

the ANDA and that it will oversee the manufacture, marketing, and sale of any product approved

under the ANDA.

### C.      Operational Structure of Pharmaceuticals and its Subsidiaries

The involvement of both Pharmaceuticals and Laboratories in notifying Cephalon about

the ANDA filing described above is consistent with the way Pharmaceuticals structures and

conducts its operations.

(Exh. 10), day-to-day business operations are not primarily

segregated by entity. Instead, Pharmaceuticals operates three divisions (sometimes also called

"segments"), each named by its business function:

> Watson Pharmaceuticals, Inc. ("Watson", the "Company", "we", "us" or "our") is
> a leading specialty pharmaceutical company engaged in the development,
> manufacture, marketing, sale and distribution of brand and generic (off-patent)
> pharmaceutical products.
>
> * * * * *
>
> As a result of the differences between the types of products we market and/or
> distribute and the methods we [use to] distribute products, we operate and manage
> our business as three operating segments: Generic, Brand and Distribution.

(Exh. 11 at 3.)[6]

---

[6]   Pursuant to Fed. R. Civ. P. 33(d), Pharmaceuticals produced its 2007 Form 10-K in response
to Cephalon's interrogatories "concerning the role and involvement of the companies that
comprise the Brand, Generic, and Distribution segments." (Exh. 13 at 2.) Accordingly,
Cephalon offers evidence from Pharmaceuticals' 2007 Form 10-K supporting the denial of
Pharmaceuticals' motion to dismiss.

**REDACTED**

**REDACTED**

In addition to using the divisional structure to achieve its corporate goals, Pharmaceuticals uses the divisional structure to measure its financial results. For example, Pharmaceuticals' financial reporting and investor disclosures define performance by division, as exemplified by Pharmaceuticals President and CEO Paul Bisaro's description during a recent conference call:

> Our performance this quarter was spread across all of our divisions. Our Generic Division had another solid quarter with new approvals and launches. Our Anda Distribution Division performed particularly well due to a couple of significant generic product launches, and we had some very exciting developments in our Brand business highlighted by our receipt of approval for [a new drug], which our Brand Division is actively preparing for launch.

(Exh. 17 at 2; *see also* Exh. 11 at 42–51 (reporting operating results by division).)

**REDACTED**

**REDACTED**

In sum, the development of generic products, including the preparation and filing of the ANDA here, is not, as Defendants contend, a task left to Laboratories. It is a collaboration orchestrated by the Generic Division—a division overseen, as Plaintiffs show below, by Pharmaceuticals.

**D.      Pharmaceuticals Leads, Oversees and is Part of the Generic Division**

In its 2007 Annual Report, Pharmaceuticals states that "[o]ur Generic segment develops, manufactures, markets, sells and distributes generic products that are the therapeutic equivalent to their brand name counterparts..." (Exh. 11 at 42.) Describing the sales activities of the Generic Division, Pharmaceuticals states:

> We predominantly market our generic products to various drug wholesalers and national retail drugstore chains utilizing 25 sales and marketing professionals. We sell our generic products primarily under the "Watson Laboratories" and "Watson Pharma" labels...

(*Id.* at 4.) Describing the Generic Division's product development efforts for the year 2007—the year the ANDA was filed—Pharmaceuticals stated:

> In 2007, our product development efforts resulted in the filing of 21 Abbreviated New Drug Applications ("ANDAs").

(*Id.* at 5.)

In this litigation, however, Pharmaceuticals attempts to distance itself from the ANDA-filing, marketing and sales efforts of the Generic Division, going so far as to represent that it has no function other than that of a holding company:

**REDACTED**

10

**REDACTED**

The ultimate responsibility for Pharmaceuticals' management lies with

its board of directors.[7]  Pharmaceuticals' board created a Regulatory Compliance Committee

having the power of the board to manage Pharmaceuticals' business affairs regarding compliance

with regulatory requirements.[8]  The Regulatory Compliance Committee charter states, in relevant

part, that:

> The primary purpose of the Regulatory Compliance Committee (the
> "Committee") is to assist the Board of Directors (the "Board") of Watson
> Pharmaceuticals, Inc. (the "Company") with the Board's oversight responsibilities
> regarding the Company's compliance with legal and regulatory requirements

---

[7]  *See* D.I 14, Exhibit 1 (Davis Decl.), Exhibit B (Amended and Restated Bylaws of Watson
Pharmaceuticals, Inc., Article II, Section 1) at 4: "The business of the Company shall be
managed by its Board which may exercise all such powers of the Company and do all such
lawful acts and things as are not by statute or by the Articles of Incorporation or by these
Bylaws directed or required to be exercised or done by the stockholders."

[8]  *See* D.I 14, Exhibit 1 (Davis Decl.), Exhibit B (Amended and Restated Bylaws of Watson
Pharmaceuticals, Inc., Article II, Section 11) at 7: "The Board may designate one or more
committees of the Board, each committee to consist of at least one (1) or more of the
directors of the Company which, to the extent provided in the resolution, shall have and may
exercise the power of the Board in the management of the business and affairs of the
Company."

related to product safety and quality and environmental, health and safety matters. By way of example, such legal and regulatory requirements include *any and all laws or regulations* applicable to the Company, its facilities, products and/or employees related to (i) *the import, export, development, manufacturing, marketing, distribution and sale of the Company's products (including the federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder).*

(Exh. 20 at 1.)

The Regulatory Compliance Committee charter reveals, in stark contrast to representations made by Defendants in this litigation, that Pharmaceuticals is not a mere "holding company" that "would not have any involvement" in regulatory filings such as the ANDA. To the contrary, Pharmaceuticals' board of directors assumes ultimate responsibility for compliance with "any and all laws and regulations . . . including the federal Food, Drug and Cosmetic Act." This includes compliance with the abbreviated new drug application approval process under the Hatch-Waxman Act.

Notably, each member of Watson Pharmaceuticals' Regulatory Compliance Committee—Michael J. Fedida, Michel J. Feldman, Albert F. Hummel, and Jack Michelson—is an outside director of Pharmaceuticals. (D.I. 14, Exhibit 1 (Davis Decl.), Exhibit E at 2; Exh. 21.) As outside directors, these individuals are—by definition—not employed or affiliated with any other Watson entity.[9] .

**REDACTED**

---

[9]   Exh. 22 (Black's Law Dictionary, Seventh Ed. (1999)) at 473 ("*outside director*. A nonemployee director with little or no direct interest in the corporation. —Also termed *affiliated director*.").

**REDACTED**                    Oversight of the Generic Division's filing of twenty-one

ANDAs in 2007, including the filing of the ANDA or _____ is attributable solely to

Pharmaceuticals.

### E.   Pharmaceuticals, as Part of the Generics Division, Prepared and Submitted the ANDA

Key to Pharmaceuticals' motion to dismiss is its contention that Laboratories—and

Laboratories alone—filed the ANDA. (D.I. 14 at 2–3 ("Laboratories was the Watson entity that

filed the ANDA, and under Section 271(e)(2)(A), it is the submission of an ANDA that is the act

of infringement.") and Exhibit 2 (Brunner Decl.) at ¶¶ 18 and 19 ("No Watson entity other than

Laboratories has had any involvement in the preparation or submission of the ANDA

No Watson entity other than Laboratories has had, or would have any involvement with respect

to ANDA _____ including preparation of data contained in the ANDA, the preparation of the

ANDA, or the anticipated manufacture of products approved under the ANDA.").)

While it may be the case that Laboratories is nominally identified as the "applicant" on

FDA Form 356h, (Exh. 1), evidence shows that Laboratories did not—as Defendants portray—

alone prepare and submit the ANDA. Consistent with Pharmaceuticals' operational structure,

and as represented in Pharmaceuticals' 2007 Form 10-K, (Exh. 11 at 5 ("In 2007, our product

development efforts resulted in the filing of 21 Abbreviated New Drug Applications.")),

Pharmaceuticals, through its Generic Division, led by a Pharmaceuticals employee, overseen by

the Pharmaceuticals' board and comprised of numerous individuals employed by various Watson

---

10

**REDACTED**

entities (including Pharmaceuticals), prepared and submitted the ANDA.  As discussed below,

evidence unambiguously demonstrates Pharmaceuticals' involvement in each and every step of

that process.

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**F.**     **Pharmaceuticals, as Overseer and Part of the Generic Division, Will Manufacture, Market and Sell the Generic FENTORA® Products**

As discussed above, Pharmaceuticals contention that it "would not have any involvement with respect to ANDA          including . . . the anticipated manufacture, use, distribution, importation, and sale throughout the U.S. of products approved under the ANDA," (D.I. 14, Exhibit 1 (Davis Decl.) at ¶ 5), is directly contradicted by Pharmaceuticals' Regulatory Compliance Committee charter, which explicitly states that Pharmaceuticals assumes board-level responsibility for regulatory compliance with "any and all laws or regulations" related to "the import, export, development, manufacturing, marketing, distribution and sale of the Company's

**REDACTED**

products." (Exh. 20 at 1.) Pharmaceuticals' future involvement in the manufacture, marketing, distribution and sale of generic FENTORA®, should the ANDA ultimately be approved, is plain from this reference alone.  Other evidence further supports the conclusion that Pharmaceuticals' involvement with generic FENTORA® will continue post-approval.

**REDACTED**

What Pharmaceuticals fails to disclose is its own involvement in the manufacturing, marketing, and sales functions performed by Laboratories and Watson Pharma.

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

V.   **ARGUMENT**

    A.   **Pharmaceuticals' Motion to Dismiss Counts 1 through 6 for Failure to State a Claim Must Be Denied**

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim

upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In analyzing a Rule 12(b)(6)

motion, the Court assumes that all factual allegations in the pleadings are true, and draws all

---

19

**REDACTED**

reasonable factual inferences in the light most favorable to the non-moving party. *Medtronic, Inc. v. Boston Scientific Corp.*, 2008 WL 4963420, *4 (D. Del. Nov. 21, 2008), citing *Amiot v. Kemper Ins. Co.*, 122 Fed.Appx. 577, 579 (3d Cir. 2004). When resolving a Rule 12(b)(6) motion, a district court may "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004) (internal citations omitted).

Because, by submitting declarations, the parties have referred to matters outside the pleadings, Pharmaceuticals' Motion to Dismiss must be treated as a motion for summary judgment, if such materials are considered by the Court. *See* Fed. R. Civ. P. 12(b)(6) and 12(d). Summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Diaz v. Carroll*, 2007 WL 2154202, *2 (D. Del. July 26, 2007), *citing* Fed. R. Civ. P. 56(c). The moving party—here, Pharmaceuticals—bears the burden of proving that no genuine issue of material fact exists. *Id., citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986).

> **1.   Pharmaceuticals Prepared and Submitted ANDA No.          Within the Meaning of the Hatch-Waxman Act, and the Motion to Dismiss Counts 1 and 4 Must Be Denied**

On a Rule 12(b)(6) motion, all allegations in the complaint must be accepted as true, and the defendant bears the burden of showing that no state of facts would entitle the plaintiff to relief. *Human Genome Sciences, Inc. v. Amgen, Inc.*, 552 F.Supp.2d 466, 470-471 (D. Del. 2008). In its Complaint, Cephalon alleged that Pharmaceuticals both directly participated and acted jointly with Laboratories in the preparation and submission of the ANDA. (D.I. 1, ¶¶ 6, 9,

17-30, 41-44, 57-59.)  In support of its motion to dismiss Counts 1 and 4 of Cephalon's

Complaint, Pharmaceuticals has merely stated in a conclusory manner that it "did not have any

involvement in the preparation and submission of the ANDA."  (D.I. 14 at 7.)  Pharmaceuticals

relies solely on declarations which themselves cite only Defendants' Paragraph IV Letter as

support for their conclusory proposition (and which, in any event, should not be considered if the

Motion is addressed under Rule 12(b)(6) rather than Rule 56(c)).  (D.I. 14, Exhibit 1 at ¶¶ 3-5;

Exhibit 2 at 3, 18-19.)  As discussed above and as alleged in Cephalon's original complaint—and

contrary to the contentions of Pharmaceuticals' declarants—the Paragraph IV Letter itself, as

described in Cephalon's allegations in the Complaint, evidences Pharmaceuticals' involvement in

the preparation and submission of the ANDA.  Taking the facts alleged in the Complaint as true,

Pharmaceuticals has failed to carry its burden under Rule 12(b)(6), and its motion should be

denied for this reason alone.[20]

If the Court treats the motion as one for summary judgment, it should also be denied

because there is a clear dispute over the central, material fact concerning Pharmaceuticals' role in

the preparation and submission of the ANDA.  In its Opening Brief in Support of its Motion to

Dismiss, Pharmaceuticals states repeatedly and unequivocally that it had *no* involvement in the

preparation or the submission of the ANDA:

- D.I. 14 at 2 ("Laboratories's parent corporation, Pharmaceuticals neither submitted nor prepared, the ANDA");

- **REDACTED**

---

[20]  Of course, Cephalon's original Complaint was prepared without the benefit of the additional information about Pharmaceuticals' involvement described above.  Cephalon's Amended Complaint adds allegations that further describe Pharmaceuticals' involvement in the planning, preparation and submission of the ANDA and the planned manufacturing, marketing and sale of the proposed products. *See* Amended Complaint at ¶¶17 to 49.

- D.I. 14 at 7 ("Pharmaceuticals did not have any involvement in the preparation and submission of the ANDA");

- D.I. 14, Exhibit 1 (Davis Decl.) at ¶ 5 ("Pharmaceuticals has not had and would not have any involvement with respect to ANDA     , including preparation of data contained in the ANDA, the preparation of the ANDA, and the anticipated manufacture, use, distribution, importation, and sale throughout the U.S. of products approved under the ANDA");

- D.I. 14, Exhibit 2 (Brunner Decl.) at ¶ 19 ("No Watson entity other than Laboratories has had, or would have any involvement with respect to ANDA     , including preparation of data contained in the ANDA, the preparation of the ANDA, or the anticipated manufacture of products approved under the ANDA").

Accordingly, Pharmaceuticals argues, because 35 U.S.C. § 271(e)(2)(A) provides that "it shall be an act of infringement to submit" an ANDA, and because "[a] party cannot be held liable as a direct infringer under 35 U.S.C. § 271(e)(2)(A) if it did not submit the ANDA at issue," (*id.* at 6), Cephalon's claims for infringement under § 271(e)(2)(A) must be dismissed.

Pharmaceuticals' characterization of the Hatch-Waxman Act as foreclosing Cephalon's cause of action is legally and factually incorrect. The evidence discussed above shows that Pharmaceuticals *did* participate—extensively and directly—in preparing and submitting the ANDA. In particular, evidence from Pharmaceuticals' Regulatory Compliance Committee Charter showing that Pharmaceuticals' board of directors exercises ultimate responsibility for "any and all laws or regulations applicable to the Company" related to "the import, export, development, manufacturing, marketing, distribution and sale of the Company's products (including the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder)," (Exh. 20 at 1), directly contradicts Pharmaceuticals' representations that it "has not had and would not have any involvement with respect to ANDA     , including . . . the anticipated manufacture, use, distribution, importation, and sale throughout the U.S. of products approved under the ANDA." Interpreting these mutually exclusive facts in favor of the non-movant, as the Court is bound to do, Pharmaceuticals' motion must be denied.

25

Defendants rely on two cases—*SmithKline Beecham Corp. v. Geneva Pharmaceuticals, Inc.*, 287 F.Supp2d 576, 584-85 (E.D. Pa. 2002), a 2002 case from the Eastern District of Pennsylvania, and *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 2001 WL 184804 (N.D. Ill., Feb. 20, 2001), a 2001 case from the Northern District of Illinois—as guiding precedent in the construction of the term "submit" under the Hatch-Waxman Act.  Neither case provides the legal principle to guide the Court in this case.  As the *Geneva* court acknowledged, the facts that it considered were "virtually identical" to those considered by the *Pentech* court, centering on the innovator drug company's attempt to name the active pharmaceutical ingredient supplier as a proper party to the litigation.  *SmithKline Beecham Corp. v. Geneva Pharm., Inc.*, 287 F.Supp2d at 584-85.

First, neither case speaks at all to the notion that the additional party to be named participated in the *submission* of the ANDA, as evidence shows Pharmaceuticals has done in this case.  Second, both cases support—not rebut—the notion that Pharmaceuticals is in fact a proper party to this litigation under an inducement theory of liability.

Moreover, Pharmaceuticals fails to take into consideration more recent precedent that is squarely on point with the relationship at issue here:  that of parent and subsidiary corporations.  *Wyeth v. Lupin Ltd.*, 505 F.Supp.2d 303 (D. Md. 2007) put *Geneva* and *Pentech* into perspective and explained the distinguishing features of the parent-subsidiary context.  There, the court determined that the parent-subsidiary relationship "[wa]s different from the relationships at issue in the *SmithKline* cases."  *Wyeth*, 505 F.Supp.2d at 306–07 (citing *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F.Supp.2d 484 (E.D. Va. 2005)).  In *Wyeth v. Lupin*, as here, the parent corporation was "actively involved with filing [the subsidiary's] ANDAs with the FDA."  *Id.* at 306–07.  In fact, the language of the legal conclusion from the *Lupin* case simply needs to have

26

the names changed to similarly distinguish the case at hand from the *SmithKline* line of reasoning: "[The parent corporation's] role in filing the ANDA is distinct from the future promises of support made by the third-party manufacturers in the *SmithKline* cases. . . . [W]hen a wholly-owned U.S. subsidiary . . . exists to distribute . . . generic drugs in the U.S. and is actively involved in the ANDA process, the subsidiary also "submits" an ANDA application." *Id.* at 306–07.  In reaching this conclusion, the court explicitly declined to rely on the fact that the subsidiary in the case happened to be owned by a foreign non-U.S. corporation (and thus had to countersign the ANDA), but instead focused on the parent's active involvement in the ANDA process, and the future plans to market and distribute the drug, upon approval. *Id.* at 306.[21]  That same active collaboration in developing the ANDA and marketing the future product exists here. (*See* Section IV. C–F, *supra.*)

Pharmaceuticals' argument is flawed because it assumes, without warrant, that Laboratories, and only Laboratories, "submitted" the ANDA within the meaning of §271(e)(2)(A).  As discussed above, the facts of this case do not support the conclusion that Laboratories alone prepared and submitted the ANDA.  (*Id.*)  The operational structure established by Pharmaceuticals, which allocates business functions among three operational divisions rather than among the multitude of its constituent entities, virtually ensures that no drug development program would ever proceed through the unilateral efforts of a single entity.  (*Id.*)  Moreover, because the Board of Directors of Pharmaceuticals, the corporate parent, exercised ultimate authority over all regulatory issues, including ANDA filings, Laboratories could not have borne sole responsibility for the preparation and the filing of the ANDA.  (*Id.*)

---

[21]   The *Wyeth* court also refused to dismiss the inducement claims against Lupin, citing *Allergan, Inc. v. Alcon Labs, Inc.* 324 F.3d. 1322, 1331 (Fed. Cir. 2003) (per curiam) for the proposition that a cause of action for induced infringement can stand under § 271(e)(2), recognizing that the allegations were sufficient.

Instead, the evidence shows that the preparation and filing of the ANDA was at all times the collaborative effort of Pharmaceuticals and Laboratories through their membership in (and in Pharmaceuticals' case, leadership of) the Generic Division.

**REDACTED**

Pharmaceuticals reports its ongoing corporate operations, including, for example, ANDA filings, in terms of actions taken by its operating divisions. (Exh. 11 at 5 (reporting that the Generic Division's "product development efforts resulted in the filing of 21 Abbreviated New Drug Applications" in 2007).) Indeed, it appears that Pharmaceuticals attributes its business functions to its operating divisions in almost every context, except in the context of this litigation, where it insists that a cause of action under § 271(e)(2)(A) can only exist against Laboratories, as a discrete legal entity, and (it claims) the sole ANDA filer.

Pharmaceuticals has identified no case law holding that the "submitter" of an ANDA for purposes of § 271(e)(2)(A) must be a single corporate entity, and the court should not read such a restriction into the Hatch-Waxman Act. To do so would be to ignore the unambiguous reality of Pharmaceuticals' chosen corporate structure, in which operations are performed through collaborative efforts, efforts for which Pharmaceuticals' Board of Directors takes ultimate responsibility, and efforts in which Pharmaceuticals and numerous Pharmaceuticals employees play a vital role.

### 2.    Pharmaceuticals is Also Liable for the Actions of Its Agent, Laboratories

These same facts support the existence of a cause of action against Pharmaceuticals for

Laboratories' filing of ANDA No.           under an agency theory.  A parent is liable as principal

for the acts performed by its subsidiary as agent, in which case a plaintiff is entitled to sue the

principal parent without joining the agent subsidiary.  *Japan Petroleum Co. (Nigeria) Ltd. v.*

*Ashland Oil, Inc.*, 456 F.Supp. 831, 837 (D. Del. 1978) (collecting authority).  The question of

whether Laboratories is an agent of Pharmaceuticals is a question of fact,  *Dentsply Intern. Inc. v.*

*Pentron Corp.*, 648 F.Supp. 856, 861 (D. Del. 1986) (citing *Eastern Industries v. Traffic*

*Controls*, 142 F.Supp. 381, 384 (D. Del. 1956), and for this reason alone, because Cephalon has

properly alleged the existence of an agency relationship between Pharmaceuticals and

Laboratories in its complaint, Pharmaceuticals' request for dismissal on 12(b)(6) grounds should

be denied.

Moreover, facts support the existence of an agency relationship under which

Pharmaceuticals is liable.  "[T]he fact that a parent holds out to the public that a subsidiary is a

department of its own business increases the likelihood that the parent will be held liable for the

subsidiary's acts."  *Japan Petroleum*, 456 F.Supp. at 841.  Further, an agency relationship may

be created by a principal's subsequent ratification of an agent's act.  *See, e.g., Venhill Ltd.*

*Partnership ex rel. Stallkamp*, 2008 WL 2270488, at *21 n.78 (Del. Ch. 2008) ("A person

ratifies an act by manifesting assent that the act shall affect the person's legal relations, or

conduct that justifies a reasonable assumption that the person so consents.") (quoting

RESTATEMENT (THIRD) OF AGENCY § 4.04 (2006)).

As discussed above, Pharmaceuticals holds Laboratories out to the public as being

subsumed within Pharmaceuticals' Generics Division.  *See, e.g.*, Exh. 11 at WLIJ0003598 ("In

2007, our product development efforts resulted in the filing of 21 Abbreviated New Drug Applications."); Exh. 52 ("Regarding Fentora, I would say it's our ability to develop generic products which is one of the differentiating factors that Watson has over some of our competitors and Fentora is a sentinel buccal delivery technology. We have that technology here, we used our own technology to develop it, but it is, of course, bio-equivalent to the Fentora product.").

Pharmaceuticals has also manifested its assent to the filing of ANDA No. *See, e.g., id.*; Exh. 53 ("Watson Pharmaceuticals, Inc. (NYSE: WPI), a leading specialty pharmaceutical company, today confirmed that its subsidiary Watson Laboratories, Inc. (a Nevada Corporation) has filed an Abbreviated New Drug Application (ANDA) with the U.S. Food and Drug Administration (FDA) seeking approval to market its Fentanyl Buccal Tablets C-II product prior to the expiration of patents owned by Cephalon, Inc.").

In sum, if the Court analyzes Pharmaceuticals' motion to dismiss Counts 1 and 4 under Rule 12(b)(6), the allegations of the Complaint and the Amended Complaint must be taken as true. Cephalon's Complaint and Amended Complaint in this matter allege that Pharmaceuticals participated in the preparation and submission of the ANDA (or caused its agent to prepare and submit the ANDA), a fact which—when taken as true—requires denial of Pharmaceuticals' motion. Pharmaceuticals, by challenging the veracity rather than the sufficiency of Cephalon's Complaint, invites the Court to look beyond the sufficiency of the pleadings. Although the Court need not do so to resolve this motion, and although the burden of proof on this motion to dismiss rests on Pharmaceuticals, not Cephalon, Cephalon has responded to Pharmaceuticals' challenge with evidence demonstrating Pharmaceuticals' participation in the preparation and submission of the ANDA and thus has identified a genuine issue of material fact that precludes a grant of summary judgment.

3.      **Cephalon's Counts 2 and 5 for Induced Infringement are Proper
         Under 35 U.S.C. § 271(b)**

Pharmaceuticals next argues that the Court should dismiss Counts 2 and 5 of Cephalon's

complaint, which allege induced infringement.  Pharmaceuticals cites this Court's opinion in

*Pfizer, Inc. v. Ranbaxy Labs., Ltd.* as holding that a claim for inducement of infringement

"cannot be based solely upon allegations that a defendant aided and abetted the filing of an

ANDA," 321 F.Supp.2d 612, 616 (D. Del. 2004), but provides no further analysis of applicable

inducement case law.

As an initial matter, Cephalon's inducement claim against Pharmaceuticals is not

premised on merely aiding and abetting the submission by another entity of the ANDA.  To

avoid any doubt, Cephalon has amended its Complaint to make clear that Cephalon alleges that

Pharmaceuticals will induce infringement of the '604 and '590 patents through the manufacture,

marketing, and sale of the fentanyl buccal product covered by the ANDA.  *See, e.g.,* Amended

Complaint, Counts 2 and 5.

This Court acknowledged in *Pfizer v. Ranbaxy* that "the Federal Circuit has recognized

that a claim for inducement of infringement may be premised on Section 271(e)(2)," 321

F.Supp.2d at 616, and explained that "the appropriate inquiry in an inducement action brought

under Section 271(b) and premised on an ANDA filing under Section 271(e) is whether the drug,

if approved, will induce infringement of the plaintiff's patent." *Id.* (quotations omitted).

Although Pharmaceuticals stresses that "a claim for inducement of infringement cannot be based

solely upon allegations that a defendant aided and abetted the filing of an ANDA," *id.*, Cephalon

does not so allege.  Instead, Cephalon alleges that Pharmaceuticals will induce infringement of

the patents in suit through the manufacture, marketing, and sale of generic FENTORA®.

The sufficiency of Cephalon's inducement allegation to state a claim is not subject to dispute. In *Forest Laboratories. Inc. v. Ivax Pharmaceuticals, Inc.*, C.A. No. 03-891/04-1244-JJF (D. Del. Mar. 23, 2005) (Exh. 48), this Court explained that a claim for inducement of infringement may be premised on Section 271(e)(2), and clarified that the inducement inquiry "is not focused on the ANDA filing, but on the ANDA product to be sold if approved by the FDA." *Id.* at 2. The Court found the plaintiff's allegations that a manufacturer who was not the ANDA filer, but who would induce infringement in the future by importing products into the United States or by selling products to the ANDA filer for subsequent sale in the United States by the ANDA filer sufficient to withstand the manufacturer's motion to dismiss. *Id.*

On appeal, the Federal Circuit agreed that an inducement claim existed against the manufacturer, confirming that "Section 271(e)(2) may support an action for induced infringement." *Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*, 501 F.3d 1263, 1272 (Fed. Cir. 2007). The court held that maintenance of a cause of action against the manufacturer, and issuance of an injunction against the manufacturer, were proper because "the plan to manufacture, import, market, and sell the [patented] products described in the ANDA was undoubtedly a cooperative venture [between the manufacturer and the ANDA filer], and [the manufacturer] was to manufacture and sell infringing . . . products to [the ANDA filer] for resale in the United States." *Id.*

Pharmaceuticals' motion to dismiss counts 2 and 5 of Cephalon's complaint is tied to its contention that it cannot be liable for "actively inducing Laboratories to submit ANDA " Because Cephalon alleges that Pharmaceuticals has engaged in and continues to engage in a cooperative venture that will induce infringement through the manufacture, marketing, and sale of the fentanyl buccal product described in the ANDA, under this Court's and the Federal

Circuit's reasoning in the *Forest Laboratories* cases, Cephalon's inducement allegations are proper and Pharmaceuticals' motion to dismiss Counts 2 and 5 must be denied.

### 4.   Cephalon Does Not Allege that Pharmaceuticals Will Directly Infringe

Pharmaceuticals next seeks dismissal of Counts 3 and 6 of Cephalon's Complaint on the ground that those Counts allege direct infringement under 35 U.S.C. § 271(a), whereas Cephalon's asserted patents claim methods of administration, rather than products.  The rationale for Pharmaceuticals' request that the Court dismiss Cephalon's claims of direct infringement—which arise from an inadvertent pleading error in the caption to Counts 3 and 6 in Cephalon's original Complaint—is moot in light of Cephalon's Amended Complaint, which corrects the caption to allege indirect infringement.  Accordingly, Pharmaceuticals' motion to dismiss Counts 3 and 6 should be denied.

### B.   Watson Pharmaceuticals' Request for Dismissal Pursuant to Fed. R. Civ. P.12(b)(7) Must Be Denied

Pharmaceuticals moves to dismiss Cephalon's Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a necessary and indispensable party—namely, Laboratories. Because Laboratories is a defendant in this action, Pharmaceuticals' motion under Rule 12(b)(7) is not only subject to scrutiny on its own merit, but it is also contingent upon the Court's granting of Laboratories' separate motion to dismiss for lack of personal jurisdiction, which Cephalon believes should properly be denied.[22]

As with its requests to dismiss Counts 1, 2, 4, and 5 of Cephalon's Complaint pursuant to Rule 12(b)(6), Pharmaceuticals' challenge under Rule 12(b)(7) relies on the contention that, because "a claim under 35 U.S.C. § 271(e)(2)(A) can only be stated against the party that submits the ANDA," (D.I. 14 at 9), and because, it claims, Pharmaceuticals did not submit the

ANDA within the meaning of the statute, Laboratories—as the supposed sole ANDA filer—is thus a necessary and indispensable party to this litigation.

Instead of citing any authority in support of its argument, Pharmaceuticals urges the Court to see that "Laboratories is clearly both (1) a necessary party and (2) indispensable to a fair resolution of issues involving infringement based entirely upon the filing of the ANDA." (D.I. 14 at 9.) Pharmaceuticals' conclusory averment fails to carry its burden under Rule 12(b)(7), as articulated by this Court in *Alcoa Inc. v. Alcan Inc.,* 495 F.Supp.2d 459, 463 (D. Del. 2007). There, the Court described the mechanism for analyzing a Rule 12(b)(7) claim. The two-part test for reviewing such a motion, the Court explained, is found in Fed. R. Civ. P. 19. (*Id.*) The first part of this test determines whether the absent party is necessary for adjudication of the issue. The second part of the test is equitable in nature, and is directed to whether a necessary party is indispensable to a fair resolution of the issues. (*Id.*; Fed. R. Civ. P. 19.)

Rule 19(a) provides that an absent person is a necessary party if it is subject to service of process and, in its absence, either: (1) complete relief cannot be accorded among the parties; or (2) the absent person claims an interest in the subject matter and that its absence will, as a practical matter, either prejudice its ability to protect that interest or result in multiple or otherwise inconsistent obligations. (Fed. R. Civ. P. 19(a).)  Neither of these requirements are met—nor even argued—here.

First, because the relief requested in a Hatch-Waxman case is injunctive in nature, and because the FDA's approval of the ANDA is effectively enjoined, complete relief can be accorded between Pharmaceuticals and Cephalon, just as it could be between Laboratories and Cephalon, because the relief goes to the ANDA approval itself. *See* 35 U.S.C. § 271(e)(4)(A)

---

[22]   Pharmaceuticals does not challenge the propriety of this Court's exercise of personal jurisdiction over it in its papers. (D.I. 12; D.I. 14.)

("For an act of infringement described in paragraph (2) [§271(e)(2)] (A) the court shall order the effective date of any approval of the drug ... involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed.").

Second, the only subject matter in which the absent party—Laboratories—could claim an interest is the ANDA application itself. This interest, however, does not belong to Laboratories alone, but also to its corporate parent, Pharmaceuticals, as discussed above. Moreover, there is no prejudice to Laboratories' ability to protect its interest, nor is there a concern of multiple or inconsistent obligations. Laboratories is the wholly-owned subsidiary of Pharmaceuticals. Pharmaceuticals will defend this action with the same resources, arguments, counsel, and evidence that is available to Laboratories; the Defendants have made no suggestion to the contrary. Therefore, regardless of whether Laboratories' separate motion to dismiss is granted, Pharmaceuticals' motion to dismiss Cephalon's Complaint pursuant to Rule 12(b)(7) must be dismissed on its own terms.

## VI.    CONCLUSION

Notwithstanding Pharmaceuticals' representations to the contrary, the evidence demonstrates that Pharmaceuticals was continuously and directly involved in the planning, preparation and submission of the ANDA. Pharmaceuticals' submission of the ANDA (itself or through an agent) was an act of patent infringement under the Hatch-Waxman Act. Accordingly, Pharmaceuticals was properly named as a defendant in this action. Further, in accordance with Federal Circuit precedent, Cephalon's cause of action against Pharmaceuticals for inducement is proper. Pharmaceuticals' request for dismissal of Cephalon's claims for direct infringement is moot, following Cephalon's amendment to its Complaint. Finally, because Pharmaceuticals itself is a proper Hatch-Waxman defendant, Laboratories is neither a necessary nor an indispensable party to this litigation, and Cephalon's claims against Pharmaceuticals stand—with

or without Laboratories as a party to the action.  For at least these reasons, Pharmaceuticals'

motion to dismiss must be denied.

Dated:  January 16, 2009    FISH & RICHARDSON P.C.

          By: _____
            William J. Marsden, Jr. (#2247)
            marsden@fr.com
            Douglas E. McCann (#3852)
            dmccann@fr.com
            Kyle Wagner Compton (#4693)
            kcompton@fr.com
            222 Delaware Ave., 17th Floor
            P.O. Box 1114
            Wilmington, DE 19899-1114
            Tel:  (302) 652-5070
            Fax: (302) 652-0607

           ATTORNEYS FOR PLAINTIFFS
           CEPHALON, INC. AND CIMA LABS, INC.

OF COUNSEL:

Duane-David Hough
Michael Siem
FISH & RICHARDSON P.C.
Citigroup Center
52nd Floor
153 East 53rd Street
New York, NY  10022-4611
Tel: (212) 765-5070

Jonathan E. Singer
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 RBC Plaza
Minneapolis, MN  55402
Tel: (612) 335-5070